**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**George BENITEZ; Javier Ramirez; Jose Camilo Lizarraga, Defendants–Appellants.**

Nos. 93–50306, 93–50396 and 93–50261.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1994.

Decided Sept. 9, 1994.

invoked under more appropriate circumstances.

Diana M. Cavanaugh, Newport Beach, CA, Michael D. Abzug, Los Angeles, CA, Julian W. Bailey, Orange, CA, for defendants-appellants.

Marc S. Harris, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, CANBY, and HALL, Circuit Judges.

FLETCHER, Circuit Judge:

George Benitez, Javier Ramirez, and Jose Camilo Lizarraga ("appellants") appeal their conditional guilty plea convictions for assaulting and interfering with government agents and using firearms during a crime of violence. Appellants appeal the district court's denial of their motion to dismiss for violation of the Speedy Trial Act and Fed.R.Crim.P. 48(b). Ramirez and Lizarraga also appeal the court's denial of their motion to suppress their confessions. Finally, Ramirez appeals

the application of the sentencing guidelines adjustment for obstruction of justice and the court's refusal to grant a two level reduction for minor-participant status. We have jurisdiction and we affirm.

I

From July 1991 to September 1992, federal agents were involved in an investigation code-named "Operation Green Ice" that targeted narcotics traffickers and money launderers in Southern California. As part of this operation, federal agents posed as money launderers and agreed to launder drug proceeds for suspected drug dealers.

On August 20, 1992, federal Agent Heidi Landsgraft arranged with a target of the investigation for the delivery of $710,000 of drug proceeds to be laundered. Lizarraga acted as the courier for the target. Two undercover agents posing as couriers for Agent Landsgraft met with Lizarraga in the parking lot of the Orange County John Wayne Airport. Several additional federal agents, including Special Agent Thomas Eilers, performed surveillance at the airport.

Prior to meeting with the undercover agents, Lizarraga arranged with Benitez, Ramirez, and codefendant Lavaro Jorge Cardona–Echeverria ("Cardona") to pose as police officers and to rob the undercover agents of the drug proceeds. At the airport meeting, shortly after Lizarraga had met with the undercover agents, Ramirez, Benitez, and Cardona approached the agents. Benitez and Ramirez carried fake police badges and Benitez wore what appeared to be a police-style "raid" jacket. Benitez flashed a badge and identified himself and his two companions as police officers. Benitez told one agent to place his hands in the air, grabbed the agent, and began to handcuff him. Ramirez and Cardona approached the other agent and allegedly attempted to force the agent into Lizarraga's car. The agent drew his weapon and ordered everyone to freeze.

Surveillance agents ran to the group and ordered appellants and Cardona to lie on the ground. When Benitez did not immediately release the agent he was handcuffing, a federal agent grabbed Benitez and forced him to the ground. Ramirez, Lizarraga, and Cardona were handcuffed but because there was not a fourth pair of handcuffs, Benitez was held on the ground. The agents called 911 for assistance and approximately fifteen minutes later officers of the Orange County Sheriff's Department ("OCSD") arrived. At this time Benitez was handcuffed. Approximately forty-five minutes later, appellants were taken to the OCSD.

Appellants were booked and interviewed by OCSD officers. OCSD Inspector Gary Jones prepared a report in connection with the arrest. The report did not disclose the true names or occupations of the federal agents, but instead used the agents' undercover names in order to avoid compromising the federal investigation. The report was presented to the Orange County District Attorneys' office, which filed a felony complaint on August 24, 1992, charging appellants with robbery, kidnapping, and possession of over $100,000 in drug proceeds in violation of state law. The complaint did not disclose that the victims were federal agents, also apparently to avoid compromising the federal undercover operation.

A preliminary hearing was set for September 14, 1992. On this date, Operation Green Ice was still underway and the federal government was still concerned about revealing the identities of the undercover agents, who were to be witnesses at the hearing. The agents did not appear at the hearing, the complaint was dismissed, and a new complaint was filed.

A new hearing was set for September 28, 1992. Prior to that date, the U.S. Attorney's Office notified the state that it intended to seek an indictment against the defendants and the state charges were dismissed.

On September 29, 1992, the U.S. Attorney's office filed a federal complaint charging appellants with assaulting federal officers in violation of 18 U.S.C. § 111. Eleven days later, on October 9, 1992, a federal grand jury returned a multi-count indictment. On November 5, 1992, Cardona filed a motion to dismiss for violations of the Speedy Trial Act and Fed.R.Crim.P. 48(b). Appellants subsequently joined this motion. On December 8, 1992, Ramirez and Lizarraga filed a motion

to suppress their confessions on the grounds that they were coerced. The district court held a hearing on January 8, 1993 to resolve appellants' motions. The court denied the motion to dismiss and the motion to suppress.

On January 19, 1993, appellants executed plea agreements in which they pled guilty to assaulting a federal officer in violation of 18 U.S.C. § 111, and using a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Each appellant reserved the right to appeal the district court's denial of their motions to dismiss and suppress. After sentencing, appellants timely appealed.

## II

■ Appellants allege that the district court erred by failing to dismiss the indictment under the Speedy Trial Act, 18 U.S.C. § 3161(b), because more than thirty days elapsed between their arrest on August 20, 1992 and their indictment on October 9, 1992. We review factual findings concerning the Speedy Trial Act for clear error and questions of law regarding its interpretation de novo. *United States v. Nash*, 946 F.2d 679, 680 (9th Cir.1991).

The Speedy Trial Act requires federal authorities to indict and bring to trial incarcerated individuals within specified time periods. This case involves the requirement that an incarcerated individual be indicted within thirty days of his arrest:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

18 U.S.C. § 3161(b). If a violation of this provision occurs, the Act requires dismissal. 18 U.S.C. § 3162(a)(1).

■ Only a "federal arrest" triggers the running of the thirty day time period set forth in § 3161(b). *United States v. Manuel*, 706 F.2d 908, 914–15 (9th Cir.1983); *United States v. Adams*, 694 F.2d 200, 202 (9th Cir.1982), *cert. denied*, 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983). Thus, to trigger the thirty day time period, appellants' arrest on August 20 must qualify as a federal arrest. We conclude that it does not.

■ A federal arrest requires that the defendant be detained pursuant to federal charges. *United States v. Cepeda–Luna*, 989 F.2d 353, 356 (9th Cir.1993). An individual who is not officially charged with a federal offense or "accused" has not been arrested for the purposes of § 3161(b). *E.g., United States v. Orbino*, 981 F.2d 1035, 1037 (9th Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 256, 126 L.Ed.2d 208 (1993); *United States v. Walker*, 856 F.2d 26, 27 (5th Cir. 1985); *United States v. Davis*, 785 F.2d 610, 613–14 (8th Cir.1986); *United States v. Candelaria*, 704 F.2d 1129, 1131–32 (9th Cir. 1983).[1] In this case, appellants' arrest was not federal because appellants were held pursuant to a complaint charging appellant with violations of *state* laws.

■ Appellants argue that the arrest falls within § 3161(b) because the original detention at the airport was made by federal officers conducting a federal investigation. However, the fact that federal authorities actively participate in an investigation does not mandate the application of the Speedy Trial Act. *Cepeda–Luna*, 989 F.2d at 356; *United States v. Johnson*, 953 F.2d 1167, 1172 (9th Cir.) (F.B.I. investigation followed

---

1. This conclusion is based in part on the interaction between § 3161(b) and § 3162(a)(1). The latter section, which prescribes sanctions for a violation of the act, states:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) . . ., such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

18 U.S.C. § 3162(a)(1). Courts have uniformly concluded that if § 3161(b) were to apply to

informal arrests and not to formal arrests in which a complaint, indictment, or information is filed, there would be a large gap between § 3161(b) and § 3162(a)(1), which applies only when there is a formal arrest. *Candelaria*, 704 F.2d at 1131. This conclusion rests also on the doctrine of dual sovereignty, and the underlying rationale that one sovereign's actions should not force the other sovereign to proceed with a prosecution before it is ready. *United States v. Mejias*, 552 F.2d 435, 441–42 (2d Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977).

by state arrest does not trigger Speedy Trial Act), *cert. denied,* — U.S. —, 113 S.Ct. 226, 121 L.Ed.2d 163 (1992); *Manuel,* 706 F.2d at 915 (neither F.B.I. involvement in investigation nor tribal arrest triggers Speedy Trial Act); *Adams,* 694 F.2d at 202 (joint federal-state investigation followed by state arrest does not trigger Speedy Trial Act). Thus, the fact that appellants' arrest followed from a federal investigation is not sufficient to create a federal arrest.

Furthermore, several circuits have held that the Speedy Trial Act is not triggered when a defendant is arrested by federal authorities and immediately released or turned over to state authorities and charged with state law violations. *E.g., United States v. Beede,* 974 F.2d 948, 950 (8th Cir.1992) (arrest by federal agents and immediate placement into state authorities' custody does not trigger Speedy Trial Act), *cert. denied,* — U.S. —, 113 S.Ct. 1016, 122 L.Ed.2d 163 (1993); *United States v. Bagster,* 915 F.2d 607, 609–10 (10th Cir.1990) (no federal arrest where arrest by federal agents but no formal charges filed); *United States v. Amuny,* 767 F.2d 1113, 1120 (5th Cir.1985) (Speedy Trial Act not triggered where federal authorities perform arrest and immediately thereafter state authorities take custody and press charges); *United States v. Kubiak,* 704 F.2d 1545, 1548 (11th Cir.) (no Speedy Trial Act violation where there is an arrest by federal authorities but no formal charges filed and defendants rearrested by local authorities on same day), *cert. denied,* 464 U.S. 852, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983).

Consistent with these cases, we hold that the arrest by federal officers who immediately relinquished control of the arrestees to state officials for state prosecution did not trigger the thirty day period of § 3161(b). Although the federal agents initially detained appellants as a result of events flowing from a federal investigation, there was no federal arrest for § 3161(b) purposes because no federal charges were filed and because the federal authorities immediately turned appel-

lants over to the state authorities for state prosecution.

 Although the law provides that a federal arrest does not occur when no formal federal charges are filed, this rule is not absolute. The Speedy Trial Act would lose all force if federal criminal authorities could arrange with state authorities to have the state authorities detain a defendant until federal authorities are ready to file criminal charges. For this reason, Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act. *See, e.g., Cepeda–Luna,* 989 F.2d at 357–58 (recognizing ruse exception but finding no evidence of ruse in given case); *Orbino,* 981 F.2d at 1036–37 (same); *United States v. Okuda,* 675 F.Supp. 1552, 1555 (D.Haw.1987) (finding violation of Speedy Trial Act where federal authorities purposefully use INS to detain defendant pending filing of criminal complaint).[2]

 Appellants contend that the state proceedings in this case were merely a ruse to buy time for the federal government to close up Operation Green Ice before filing charges against appellants and exposing their undercover agents. The district court rejected this argument, finding that the state arrest was not a temporary device to restrain defendants because the state "was intent upon going ahead with their prosecution if the feds did not, and until the federal authorities actually proceeded, the state authorities had no certainty that they were going to." R.T. 1/8/93 at 216.

The question of whether the state prosecution was merely a ruse is very close. Of particular concern is the fact that during appellants' detention, state prosecuting attorneys and federal attorneys made repeated contact regarding whether the federal government intended to file charges. In light of the federal government's concern about compromising Operation Green Ice if their agents were to testify at the state hearing,

---

2. This exception was first recognized in the context of Sixth Amendment speedy trial rights. *See United States v. Cordova,* 537 F.2d 1073, 1076 (9th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976). We have since recognized its applicability to Speedy Trial Act claims. *Cepeda–Luna,* 989 F.2d at 357–58.

the continued contact between state and federal authorities combined with the state's dismissal of the first complaint and filing of a new complaint are suspicious.

The court relied primarily on the testimony and declaration of State Attorney Christopher Kralick, which stated that the state intended to proceed with its prosecution if the federal authorities did not file charges. Kralick represented that at the time he filed the state complaint, he did not think the U.S. Attorney had made a final prosecution decision. He also noted that he was only willing to continue the preliminary hearing once, that he intended to call the undercover agents as witnesses at the second hearing if the federal prosecutors did not file charges, and that he understood that the agents would be available to him if he needed them. In light of this evidence, we cannot conclude that the district court's finding that the state prosecution was brought in good faith was clearly erroneous.[3]

### III

■ Appellants challenge the district court's refusal to dismiss the indictment pursuant to Fed.R.Crim.P. 48(b).

Rule 48(b) authorizes the dismissal of a case for want of prosecution. It provides:

If there is unnecessary delay in presenting the charge to the grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

Fed.R.Crim.P. 48(b).

Rule 48(b) is " 'limited to post-arrest situations.' " *United States v. Lovasco,* 431 U.S. 783, 789 n. 8, 97 S.Ct. 2044, 2048 n. 8, 52 L.Ed.2d 752 (1977) (quoting *United States v. Marion,* 404 U.S. 307, 319, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971)). As with the Speedy Trial Act, an arrest or prosecution by state authorities does not trigger Rule 48(b). *E.g., United States v. McCoy,* 977 F.2d 706, 712 n. 6 (1st Cir.1992); *United States v. Brand,* 556 F.2d 1312, 1315 (5th Cir.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763 (1978); *United States v. Mejias,* 552 F.2d at 442; *United States v. McGiffen,* 578 F.Supp. 899, 902 (E.D.Cal.1983), *aff'd,* 763 F.2d 368 (9th Cir.), *cert. denied,* 474 U.S. 842, 106 S.Ct. 126, 88 L.Ed.2d 103 (1985). Similarly, the federal seizure of an individual and subsequent release does not trigger Rule 48(b). *See United States v. Kidd,* 734 F.2d 409, 412 (9th Cir.1984).

In this case, appellants were not held to answer to the district court until September 29, 1993 when federal charges were filed. Although appellants were held in custody between August 20 and September 29, they were held by state authorities pursuant to state charges. Accordingly, there was no arrest for Rule 48(b) purposes until September 29. Because appellants were indicted eleven days later, the district court did not err in denying the motion to dismiss pursuant to Rule 48(b).

### IV

■ Ramirez and Lizarraga argue that the district court should have suppressed their confessions as involuntary. We review the voluntariness of a confession de novo. *Collazo v. Estelle,* 940 F.2d 411, 415 (9th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992). Factual findings underlying a district court's determination regarding voluntariness of a confession are reviewed for clear error. *United States v. Jenkins,* 938 F.2d 934, 937 (9th Cir.1991). The government has the burden of proving voluntariness by a preponderance of the evidence. *Id.*

■ Both Ramirez and Lizarraga submitted declarations in support of their motions to suppress. In his declaration, Ramirez as-

---

3. Appellants note that it was illegal for the state to conceal the identities of the undercover agents in the complaint. While this may be true, the state's illegal action is not directly relevant to whether the state and federal authorities colluded to detain appellants improperly. The violation in and of itself, although certainly not con-

doned by this court, does not trigger the Speedy Trial Act. *See United States v. Charles,* 883 F.2d 355, 356 (5th Cir.1989), *cert. denied,* 493 U.S. 1033, 110 S.Ct. 750, 107 L.Ed.2d 767 (1990) (fact that county officials wrongfully held defendant for twelve months does not trigger Speedy Trial Act).

serted that his confession was involuntary because he was beaten by federal officers during the arrest and by state officers at the jail. According to the declaration, during the arrest the agents threw Ramirez on the ground, kicked him repeatedly, and threatened to kill him. During the arrest Benitez was severely beaten and a police officer said, "I should have shot him." At the police station Ramirez observed the police beat Cardona. He asked to see his lawyer but the police refused to allow this until he made a statement. In the end, Ramirez made a statement to avoid more beatings.

Lizarraga's declaration is similar. It asserts that he also was thrown to the ground during the arrest and that an officer threatened to break his nose. He heard police striking Benitez and also heard an officer state that he should have shot Benitez. Lizarraga also saw a police officer strike Cardona at the police station.[4]

In opposition to these declarations, the government submitted a declaration by Agent Eilers. Eilers stated that during the arrest Benitez was grabbed and forced to the ground because he did not release the undercover agent he was handcuffing when ordered to do so. Benitez resisted when the officers attempted to handcuff him and he had to be physically held down. Other than these uses of physical force, the declaration asserts that none of the defendants were beaten before, during, or after their arrest. The government also submitted the appellants' videotaped confessions.

After a hearing at which several witnesses testified, the district court denied appellants' motions to suppress on the grounds that it found their declarations to be not credible. The court relied primarily on Benitez's and Ramirez's videotaped confessions to find that the version of the arrest given by appellants in their confessions was more consistent with the version the officers provided than the version appellants subsequently provided in their declarations.

Appellants contend that the district court's reliance on the videotapes to rebut the allegations of mistreatment at the jail was erroneous. They specifically note that although Agent Eilers' declaration provided rebuttal to the allegations of abuse during the arrest, the government did not specifically rebut the allegations of physical abuse at the station house. Because the government has the burden of proving that the confessions were voluntary, appellants argue that the district court could not rule that the confessions were voluntary in the absence of rebuttal evidence regarding the events at the station house.

We too are troubled by the procedure in this case. Apparently, the district court decided from viewing the videotaped confessions what had happened before the confessions occurred. Such a procedure raises significant concerns.

We conclude, however, that the district court was not clearly erroneous in finding that the confessions were voluntary. As the district court correctly noted, appellants' descriptions during their confessions conformed substantially with the officers' descriptions of the arrest. Appellants' subsequent declarations contradict their earlier confessions. There is no evidence from the videotapes of any improper conduct during the statements, and no suggestion of misbehavior before the confessions. Instead, appellants appear relaxed and intent on telling their stories. Moreover, appellants did not confine their admissions in their confessions to their criminal acts. Rather, they gave very detailed descriptions of their activities and both confessions were partially exculpatory. It is therefore clear that appellants were not simply telling the officers what they believed the officers wanted to hear. In sum, the court's denial of the motions to suppress was not error.

## V

 Ramirez contends that the district court erred in applying a two level

---

4. Benitez also filed a declaration and a motion to suppress. In his declaration, Benitez alleges that he was thrown to the ground and beaten when he was arrested. He made a statement to avoid subsequent beatings. After the arrest, Benitez saw a doctor at the county jail. The medical record from this visit indicates that Benitez had lacerations to his ear and a loose filling in his tooth. Benitez does not appeal the district court's denial of his motion to suppress.

enhancement to his offense level for obstruction of justice. *See* U.S.S.G. § 3C1.1.[5] Application of the Sentencing Guidelines is reviewed de novo. *United States v. Fagan,* 996 F.2d 1009, 1017 (9th Cir.1993). The district court's factual findings in the sentencing phase are reviewed for clear error. *United States v. Chapnick,* 963 F.2d 224, 226 (9th Cir.1992).

It is an obstruction of justice to provide materially false information to a law enforcement officer if the false statements "significantly obstructed or impeded the official investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, comment. (nn. 3, 4).[6] In this case, Ramirez provided pretrial services with a false date and place of birth and he did not disclose to the arresting officers or to pretrial services an outstanding warrant for his escape from federal prison camp.[7] The government subsequently discovered the outstanding warrant using Ramirez's social security number. When Ramirez was confronted with this evidence at his presentencing interview, he acknowledged that he had previously provided false information because he knew he was wanted on an outstanding escape warrant.

We conclude that the district court did not err in basing the enhancement on Ramirez's attempts to conceal an outstanding warrant from pretrial services. Ramirez's falsehood was not only material, it also significantly impeded the investigation and prosecution. Although the government eventually discovered the outstanding warrant, this discovery did not occur until after the plea was entered, a date that was after the trial had been originally scheduled to begin. Knowledge of an outstanding warrant would have affected the government's handling of the plea agreement, as well as bail. In light of these facts, the court's finding of obstruction of justice is not clearly erroneous.

## VI

Ramirez also challenges the district court's refusal to apply a two level adjustment for minor participant status under U.S.S.G. § 3B1.2(b).[8] We review for clear error a district court's determination that a defendant was not a minor participant. *United States v. Hatley,* 15 F.3d 856, 860 (9th Cir.1994).

Under U.S.S.G. § 3B1.2(b), a defendant is entitled to a two-level reduction as a minor participant if he is "less culpable than most other participants, but [his] role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n. 3). However, an adjustment is

5. Section 3C1.1 provides:
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

6. The government states that whether justice is actually obstructed is irrelevant. This assertion is only partially correct. Although our earlier opinions have made this assertion, *see United States v. Morales,* 977 F.2d 1330, 1331 (9th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1399, 122 L.Ed.2d 772 (1993); *United States v. Baker,* 894 F.2d 1083 (9th Cir.1990), the Sentencing Commission has amended the commentary to U.S.S.G. § 3C1.1 to distinguish between false statements that are made to probation officers, which do not need to impede the prosecution or investigation to constitute an obstruction of justice, and *those that are made to the police, which do. See* U.S.S.G.App. C, n. 347 (1990); *see also United States v. McDonald,* 964 F.2d 390, 392–93 (5th Cir.1992).

7. Ramirez also identified himself to the magistrate as "Javier Ramirez". The government contends that the name "Javier Ramirez" is a false name because Ramirez's full name is "Francisco Javier Cardona–Ramirez." It is unclear from the record whether this is in fact a false name. Many Spanish surnames are composed of both the father's and the mother's family names, in that order. These names are often shortened to a single name, which is generally, but not always, the first of the two. Chicago Manual of Style ¶ 7.10 at 188 (13th ed. 1982). If "Javier Ramirez" was the name typically used by Ramirez, then Ramirez's representations were not false. On the other hand, the Presentence Report reflects that Ramirez escaped from imprisonment *for a prior conviction, fled to Columbia,* and later returned to the United States with a Venezuelan passport under a slightly different name and date of birth, implying that the name "Javier Ramirez" is in fact false. Because we cannot determine from the record whether the name given by Ramirez was false, we do not rely on those statements for our decision.

8. U.S.S.G. § 3B1.2 provides:
 Based on the defendant's role in the offense, decrease the offense level as follows:
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
 In cases falling between (a) and (b), decrease by 3 levels.

warranted only where the defendant plays a role in the offense which makes him "*substantially* less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (backg'd.) (emphasis added).

Ramirez argues that he is less culpable than his codefendants and thus is entitled to the downward adjustment. In order to address this argument, we must first decide whether Ramirez's conduct is to be assessed against that of his co-participants in the instant offense, or alternatively, against that of the hypothetical "average participant" in the type of crime involved.

In *United States v. Petti*, 973 F.2d 1441 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1859, 123 L.Ed.2d 480 (1993), we held that, with respect to adjustments for *minimal* participant status, the relevant comparison is that between the defendant's conduct and the conduct of his co-participants. *Id.* at 1447. Although our analysis in *Petti* relied in part on commentary discussing adjustments for minimal participant status, we can find no logical basis for adopting a different analysis when adjusting for minor participant status. We do not believe that the Sentencing Commission intended for us to apply different comparisons depending on whether they are considering an adjustment for minimal participant status as opposed to an adjustment for minor participant status. We therefore hold that the relevant comparison in determining whether a two-level adjustment in offense level is appropriate is to the conduct of co-participants in the case at hand.

Even if a defendant is less culpable than his co-participants, however, he is not automatically entitled to a reduction for minor participant status. *United States v. Andrus*, 925 F.2d 335, 338 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 249, 116 L.Ed.2d 204 (1991); *see also United States v. Davis*, 15 F.3d 902, 914 (9th Cir.1994). Rather, to merit a reduction the defendant should be "substantially" less culpable than his co-participants. *Andrus*, 925 F.2d at 337; U.S.S.G. § 3B1.2, comment. (backg'd).

At sentencing, the district court made the appropriate comparison and found that Ramirez and his codefendants were equally culpable participants in the crime. This finding is not clearly erroneous. Ra-

mirez was not a silent bystander during the robbery; he participated fully by impersonating a police officer and pretending to arrest the undercover agents. He supplied the guns that he and Benitez used in the assault, and although Ramirez's gun was unloaded during the attempted robbery, he carried ammunition in his pocket. Moreover, although Ramirez was to receive less money than Benitez, he still was to receive $10,000, a substantial amount. *See Davis*, 15 F.3d at 914 (defendant knew he was carrying drugs and was prepared to accept $6,400). In light of these facts, the district court's refusal to apply a two level downward adjustment for minor participant status was not clearly erroneous.

## VII

The district court's denial of the motion to dismiss and the motion to suppress are affirmed. Ramirez's sentence is affirmed.

AFFIRMED.