# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-41654

United States Court of Appeals
Fifth Circuit

**FILED**
December 6, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

OBED TORRES-HERNANDEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, OWEN, and HAYNES, Circuit Judges.

OWEN, Circuit Judge:

Obed Torres-Hernandez was charged under 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 with possession with intent to distribute 95 kilograms of marijuana, and he pled guilty to that offense.[1] He was sentenced to 57 months of imprisonment[2] and contends on appeal that because his participation in this drug trafficking offense was limited to carrying a bundle of marijuana on his back across the border between Texas and Mexico, the

---

[1] The original indictment alleged more than 100 kilograms of marijuana, but a subsequent reweigh showed only 95 kilograms.

[2] The defendant was also sentenced to 18 months to run consecutively for violation of the terms of his probation for a previous offense.

No. 15-41654

district court erred in failing to grant a downward adjustment of his offense level. Torres-Hernandez contends that under § 3B1.2 of the Sentencing Guidelines,[3] in light of Amendment 794, which became effective on November 1, 2015, he played a minor role in the offense and should have received a two-level reduction.[4] We affirm the district court's judgment.

## I

Customs and Border Patrol agents observed six individuals walking north from the Rio Grande River towards Brownsville, Texas carrying bundles on their backs. Obed Torres-Hernandez and others were apprehended shortly thereafter, and five bundles of marijuana were found nearby. Four individuals, including Torres-Hernandez, were arrested while the other two, who were juveniles, were released. The four men who were arrested had strap marks on their backs that were consistent with having carried the bundles. Each of the men admitted that he knew he was transporting a controlled substance within the United States. The bundles, collectively, contained 95 kilograms of marijuana.

Torres-Hernandez pled guilty, and he was held accountable for the full amount of marijuana (95 kilograms) that the four smugglers were jointly transporting. Torres-Hernandez had prior criminal convictions, including a conviction in 2010 for possession with intent to distribute 162.75 kilograms of marijuana. That offense was committed in the same manner, and in essentially the same location, as the offense that is the subject of this appeal. The presentence report calculated the advisory Guideline's sentencing range to be 46 to 57 months of imprisonment. This calculation was based on an

---

[3] *See* U.S. SENTENCING GUIDELINES MANUAL § 3B1.2 (U.S. SENTENCING COMM'N 2015) [hereinafter U.S.S.G.].

[4] U.S.S.G. app. C, amend. 794, at 116-18 (Supp. Nov. 1, 2015).

No. 15-41654

offense level of 19 and nine criminal history points, placing Torres-Hernandez in criminal history category IV.

Torres-Hernandez objected to this calculation, contending that, under § 3B1.2 of the Guidelines, he was entitled to a two-level reduction of his offense level because as a drug courier, he played only a minor role in the offense.  At the sentencing hearing held on December 2, 2015, counsel argued that Torres-Hernandez should receive an adjustment based on Amendment 794 to the Guidelines, which had become effective one month earlier, on November 1, 2015, because he was one of several men crossing the river with a backpack of marijuana, there was no evidence he was in possession of a radio or map, Torres-Hernandez did not know the ultimate destination of the drugs, and he did not have any authority to decide or influence the destination of the drugs.

The prosecutor countered that Torres-Hernandez had previously committed the same offense, served 54 months of a mandatory 60 months' prison sentence, had been deported in January 2014, and had committed the instant offense in the same manner and place less than one year later.  The prosecutor argued that the district court could infer from this prior conviction that Torres-Hernandez had some knowledge of the drug trafficking organization and how it worked.  The prosecutor also argued that Torres-Hernandez's violation of the law was flagrant and warranted a sentence at the top of the advisory sentencing range.

After hearing these arguments, the district court declined to grant a minor role adjustment and sentenced Torres-Hernandez to 57 months of imprisonment for the possession-with-intent-to-distribute offense.  Torres-Hernandez was also in violation of his term of supervised release imposed for his prior drug trafficking offense, and the district court sentenced him to 18 months of imprisonment consecutive to the 57 months' sentence.  Torres-Hernandez appeals his 57 months' sentence.  The sentence for the violation of

No. 15-41654

supervised release imposed in the prior judgment of conviction is not at issue in this appeal.

## II

Torres-Hernandez contends that Amendment 794 materially changed the factors that a sentencing court should consider in deciding whether to apply a mitigating role adjustment under § 3B1.2. He asserts that the district court misapplied the law in assessing whether he should have received a minor role adjustment.

Section 3B1.2 of the Sentencing Guidelines instructs sentencing courts to decrease a defendant's offense level by four levels "[i]f the defendant was a minimal participant in any criminal activity," two levels "[i]f the defendant was a minor participant in any criminal activity," and three levels if the defendant's level of participation fell between minimal and minor.[5] The commentary to § 3B1.2 provides that a mitigating role adjustment is available to any defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant."[6]

Amendment 794 left the text of § 3B1.2 unchanged but made various revisions to the commentary.[7] The Commission provided various reasons for the amendment. The Commission first explained that the amendment was a result of a study that, overall, found the mitigating role provision in the Guidelines "is applied inconsistently and more sparingly than the Commission intended."[8] The Commission then explained that "[i]n drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to

[5] U.S.S.G. § 3B1.2.
[6] *Id*. § 3B1.2 cmt. n.3(A).
[7] *See* U.S.S.G. app. C, amend. 794, at 117-18 (Supp. Nov. 1, 2015).
[8] *Id*. at 117.

drug defendants who performed similar low-level functions (and that rates of application vary widely from district to district)." The Commission continued,

> [f]or example, application of mitigating role varies along the southwest border, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of the 2-, 3-, and 4-level adjustments.[9]

The amendment does not, however, impose any concrete requirements as to whether and when drug "couriers and mules," like Torres-Hernandez, should receive a mitigating role adjustment and if so, which level of the three options should apply. Instead, the Commission provided "additional guidance" by "[s]pecifially . . . address[ing] a circuit conflict and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances."[10] The Commission additionally provided "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies, and, if so, the amount of the adjustment."[11]

With regard to the circuit conflict, the Commission noted that the Seventh and Ninth Circuits had concluded that the "average participant," as used in § 3B1.2, "means only those persons who actually participated in the criminal activity at issue in the defendant's case, so that the defendant's culpability is determined only by reference to his or her co-participants in the case at hand."[12] The Commission observed that the First and Second Circuits had interpreted § 3B1.2 differently, "conclud[ing] that the 'average participant'

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* (citing *United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006); *United States v. Benitez*, 34 F.3d 1489, 1498 (9th Cir. 1994); *United States v. DePriest*, 6 F.3d 1201, 1214 (7th Cir. 1993)).

also includes 'the universe of persons participating in similar crimes.'"[13]  Under this latter approach, the Commission said that "courts will ordinarily consider the defendant's culpability relative both to his co-participants and to the typical offender."[14]  The Commission stated that Amendment 794 "generally adopts the approach of the Seventh and Ninth Circuits," such that "when determining mitigating role, the defendant is to be compared with the other participants 'in the criminal activity.'"[15]  The Commission explained that "[f]ocusing the court's attention on the individual defendant and the other participants is more consistent with the other provisions of Chapter Three, Part B."[16]

The Commission also reasoned that at least four Circuit Courts of Appeals had "denied [a defendant] a mitigating role adjustment solely because he or she was 'integral' or 'indispensable' to the commission of the offense."[17]  Disagreeing with this approach, the Commission explained that Amendment 794 "revise[d] the commentary to emphasize that 'the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative' and that such a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible."[18]  The commentary was amended to specify that "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative [and] [s]uch a defendant may receive an adjustment under this guideline if he or she is

---

[13] *Id.* (quoting *United States v. Santos*, 357 F.3d 136, 142 (1st Cir. 2004)) (citing *United States v. Rahman*, 189 F.3d 88, 159 (2d Cir. 1999)).

[14] *Id.*

[15] *Id.*

[16] *Id.* (citing U.S.S.G. § 3B1.2 cmt. n.3(C)).

[17] *Id.* at 118 (citing *United States v. Skinner*, 690 F.3d 772,783-84 (6th Cir. 2012); *United States v. Deans*, 590 F.3d 907, 910 (8th Cir. 2010); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008); *United States v. Carter*, 971 F.2d 597, 600 (10th Cir. 1992)).

[18] *Id.* (quoting U.S.S.G. § 3B1.2 cmt. n.3(C)).

substantially less culpable than the average participant in the criminal activity."[19]

The list of non-exhaustive factors added to the commentary by Amendment 794 directs a sentencing court to consider:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.[20]

Amendment 794 provides that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline."[21]

## III

"The district court's 'interpretation or application of the Sentencing Guidelines' is reviewed *de novo*, while its factual findings are reviewed for clear error."[22] Whether a defendant "was a minor or minimal participant is a factual determination that we review for clear error."[23] In this context, we have held

---

[19] *Id.* at 116.

[20] *Id.*

[21] *Id.*

[22] *United States v. Lige*, 635 F.3d 668, 670 (5th Cir. 2011) (quoting *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir.2008)).

[23]*United States v. Gomez-Valle*, 828 F.3d 324, 327 (5th Cir. 2016) (quoting *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005).

that "[a] district court's factual findings are not clearly erroneous if they are 'plausible in light of the record as a whole.'"[24] We have further held that "[a] party seeking an adjustment in the base level of an offense bears the burden of proving by a preponderance of the evidence that the adjustment is warranted."[25]

The commentary to § 3B1.2 provides guidance for determining when a defendant who plays a part in committing the offense is "substantially less culpable than the average participant."[26] This part of the commentary, which was essentially unchanged by Amendment 794, explains:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.[27]

Torres-Hernandez relies heavily on this provision, but he does not come within its parameters. He was held accountable for more than "only . . . the quantity of drugs [he] personally transported."[28] He was held accountable for the entire quantity of drugs that the group of men transported. An example in the commentary to § 1B1.3 addresses the accountability for those who transport drugs in the manner that Torres-Hernandez did:

> Defendants T, U, V, and W are hired by a supplier to backpack a quantity of marihuana across the border from Mexico into the United States. Defendants T, U, V, and W receive their individual

---

[24] *United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001) (quoting *United States v. Alford*, 142 F.3d 825, 831 (5th Cir.1998)).

[25] *Id.*

[26] U.S.S.G. § 3B1.2 cmt. n.3(A).

[27] *Id.*

[28] *Id.*

> shipments from the supplier at the same time and coordinate their importation efforts by walking across the border together for mutual assistance and protection.  Each defendant is accountable for the aggregate quantity of marihuana transported by the four defendants.  The four defendants engaged in a jointly undertaken criminal activity, the object of which was the importation of the four backpacks containing marihuana (subsection (a)(1)(B)), and aided and abetted each other's actions (subsection (a)(1)(A)) in carrying out the jointly undertaken criminal activity (which under subsection (a)(1)(B) were also in furtherance of, and reasonably foreseeable in connection with, the criminal activity).[29]

This example then contrasts when it would be appropriate to hold a defendant accountable only for the amount he transported:

> In contrast, if Defendants T, U, V, and W were hired individually, transported their individual shipments at different times, and otherwise operated independently, each defendant would be accountable only for the quantity of marihuana he personally transported (subsection (a)(1)(A)).  As this example illustrates, the scope of the jointly undertaken criminal activity may depend upon whether, in the particular circumstances, the nature of the offense is more appropriately viewed as one jointly undertaken criminal activity or as a number of separate criminal activities. See Application Note 3(B).[30]

Accordingly, the statement in Application Note 3(A) of the Commentary to Guideline section 3B1.2 that "[a] defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline" is inapplicable to Torres-Hernandez.

Amendment 794's explanation that "average participant," as used in § 3B1.2, "means only those persons who actually participated in the criminal activity at issue in the defendant's case, so that the defendant's culpability is

---

[29] U.S.S.G. § 1B1.3 n.4(C)(viii).
[30] *Id.*

determined only by reference to his or her co-participants in the case at hand"[31] also indicates that the district court correctly construed and applied this section of the Guidelines. The only evidence in the record regarding the participation of others in the possession of the 95 kilograms of marijuana for distribution pertains to the other individuals who had transported the drugs on their respective backs. Torres-Hernandez was no more or less culpable than the other transporters. He did not offer any evidence as to the participation, or expected participation, of others involved in the growing, further transportation, or intended sale of this marijuana.

With regard to the factors added by Amendment 794 to the commentary accompanying § 3B1.2, the Commission expressly stated that they are non-exclusive, and they are only factors. We cannot say that the district court erred, clearly or otherwise, in applying these factors to the facts of this case. Torres-Hernandez certainly understood that he and those accompanying him were illegally transporting marijuana within the United States, as part of the distribution chain. There is no evidence as to his participation in planning or organizing the criminal activity, or the degree to which he exercised decision-making authority or influenced the exercise of that authority. This weighs in favor of an adjustment. The evidence is clear, however, as to the nature and extent of his participation in this criminal activity and the acts he performed. He participated in physically transporting the marijuana into the United States. He was paid for his participation, though the amount of his compensation does not appear to be in the record. Another consideration in the commentary to § 3B1.2 says that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to

---

[31] U.S.S.G. app. C, amend. 794, at 117 (Supp. Nov. 1, 2015) (citing *United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006); *United States v. Benitez*, 34 F.3d 1489, 1498 (9th Cir. 1994); *United States v. DePriest*, 6 F.3d 1201, 1214 (7th Cir. 1993)).

perform certain tasks should be considered for an adjustment."[32]   There was no evidence as to whether Torres-Hernandez had a proprietary interest, but even if he did not, this is but one factor to be considered by the sentencing court.

The Presentence Report does not discuss in any detail a mitigating role adjustment or any of the factors presented in the commentary.  But that is not dispositive of whether the district court considered the various factors set forth in the commentary to § 3B1.2.  Torres-Hernandez objected to the Presentence Report and argued that he was entitled to an adjustment because his role in the offense was minor.  The arguments were before the district court.

In contending that the district court incorrectly applied § 3B1.2, Torres-Hernandez relies primarily on the district court's statement at the sentencing hearing that "getting the drugs into the United States is a critical role and is not a minor role by any means."  This is not an indication that the district court relied solely on its view that transporting the marijuana into this country was a critical role in the offense.  Counsel for Torres-Hernandez made arguments, based on Amendment 794 and the commentary to § 3B1.2, as to why Torres-Hernandez's participation should be considered minor.  The Government made counter arguments.  The district court was not required to expressly weigh each factor in § 3B1.2 on the record.  Based on the record of what was presented to the district court in Torres-Hernandez's written objections, his arguments at the sentencing hearing, and the Government's responses, the district court considered and rejected counsel's arguments, not because the district court was unaware of or failed to consider the factors in the commentary to § 3B1.2, but because it weighed the factors and concluded that based on the offense charged, which was possession of a controlled substance for distribution, and the

---

[32] U.S.S.G. § 3B1.2 cmt. n.3(C).

11

defendant's role in that offense as compared to the others identified as participating, Torres-Hernandez was not entitled to an adjustment.[33]   The district court's finding that Torres-Hernandez was not a minor participant and that he was not entitled to an adjustment is plausible based on the record.

The commentary to § 3B1.2, including the explanations in Amendment 794 for the revisions to that commentary, does not require, as a matter of law, that an adjustment must be made for transporters such as Torres-Hernandez. The commentary and Amendment 794 instead confirm that there are many factors that a sentencing court should consider, and how those factors are weighed remains within the sentencing court's discretion.   The Guidelines expressly provide that *whether* to grant a reduction in the offense level based on a defendant's participation in the offense "involves a determination that is heavily dependent upon the facts of the particular case."[34]

\*      \*      \*

We AFFIRM the district court's judgment.

---

[33] *See generally United States v. Morosco*, 822 F.3d 1, 24 (1st Cir. 2016).
[34] U.S.S.G. § 3B1.2 n.3(C).