NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 13 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff - Appellee, v. GREGORY LEE RODVELT, Defendant - Appellant. | No. 23-4182 D.C. No. 1:19-cr-00454-MC-1 MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, Chief District Judge, Presiding

Submitted February 3, 2025[**]
Portland, Oregon

Before: BEA, KOH, and SUNG, Circuit Judges.

Defendant-Appellant Gregory Lee Rodvelt ("Rodvelt") was sentenced to

150-months imprisonment after a jury found him guilty of assaulting a federal

officer, in violation of 18 U.S.C. § 111(a)(1), (b), and using and discharging a

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (iii). Rodvelt appeals the district court's denials of his motions for judgment of acquittal, denial of his motion to dismiss for violation of his speedy trial rights, denial of his motion to dismiss for violation of his Fifth and Sixth Amendment rights, and denial of his motion to suppress. Because the parties are familiar with the facts, we recite them only as necessary to explain our decision. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. A district court's ruling on a motion for judgment of acquittal is reviewed de novo. *See United States v. Juv. Female*, 566 F.3d 943, 945 (9th Cir. 2009). On appeal, the reviewing court must "determine whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Under federal law, "[w]hoever … forcibly assaults … any [officer or employee of the United States] while engaged in or on account of the performance of official duties" shall be fined or imprisoned. 18 U.S.C. § 111(a)(1). *See* 18 U.S.C. § 1114(a). "[F]or purposes of 18 U.S.C. § 111, the test of a Government agent's conduct is whether he is acting within the scope of what he is employed to do, as distinguished from engaging in a personal frolic of his own." *Juv. Female*,

566 F.3d at 949-50 (internal quotation marks and alteration omitted). The Ninth Circuit has approved jury instructions stating, "the test for determining whether an officer is engaged in the performance of official duties is whether the officer is acting within the scope of his employment, that is, whether the officer's actions fall within his agency's overall mission, in contrast to engaging in a personal frolic of his own," and "that the question was not whether the officer is abiding by laws and regulations in effect at the time of the incident or whether the officer is performing a function covered by his job description." *United States v. Ornelas*, 906 F.3d 1138, 1149 (9th Cir. 2018) (internal quotation marks and alteration omitted).

Viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence for a rational trier of fact to have found beyond a reasonable doubt that Special Agent Bomb Technician Andrew Sellers ("Agent Sellers") was engaged in official duties, rather than engaged in a personal frolic, at the time he was injured on Rodvelt's property. Several witnesses testified that FBI bomb technicians regularly work with state law enforcement on public safety missions to clear potential hazards. Agent Sellers had previously worked with state law enforcement on such missions on 50-100 occasions. There is no indication that Agent Sellers engaged in a personal frolic when he assisted state law enforcement in clearing Rodvelt's property. The district court correctly denied Rodvelt's motions for judgment of acquittal.

3

2.     A district court's ruling on a motion to dismiss an indictment for Speedy Trial Act ("STA") and Sixth Amendment violations is reviewed de novo. *See United States v. Olsen*, 21 F.4th 1036, 1040 (9th Cir. 2022); *United States v. Myers*, 930 F.3d 1113, 1118 (9th Cir. 2019). The district court's factual findings are reviewed for clear error. *See Myers*, 930 F.3d at 1118.

"Only a federal arrest triggers the running of the thirty day time period set forth in [STA] § 3161(b)." *United States v. Benitez*, 34 F.3d 1489, 1493 (9th Cir. 1994) (internal quotation marks omitted). "Although the law provides that a federal arrest does not occur when no formal federal charges are filed, this rule is not absolute. The [STA] would lose all force if federal criminal authorities could arrange with state authorities to have the state authorities detain a defendant until federal authorities are ready to file criminal charges. For this reason, [STA] time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the [STA]." *Id*. at 1494. Similarly, the Ninth Circuit has "indicated speedy trial rights under the Sixth Amendment might be so implicated even in a state arrest, if there was evidence of collusion between state and federal authorities." *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993). "The district court's finding that there was no collusion or ruse on the part of the Government" is reviewed for clear error. *United States v. Pena-Carrillo*, 46 F.3d 879, 883 (9th Cir. 1995).

4

Rodvelt argues that his arrest on September 8, 2018, for violating the conditions of his pretrial release in a separate state case was a ruse. The district court did not clearly err in finding that Rodvelt's September arrest on a state warrant was not a ruse. The district court acknowledged the substantial amount of federal coordination in Rodvelt's arrest. However, the district court found that the state had an independent justification for the warrant, acted on the warrant, and held a bond hearing pursuant to the warrant, irrespective of the federal investigation.

3.      A district court's ruling on a motion to dismiss an indictment for Fifth and Sixth Amendment violations is reviewed de novo. *See United States v. Marcucci*, 299 F.3d 1156, 1158 (9th Cir. 2002); *United States v. Miller*, 953 F.3d 1095, 1105 (9th Cir. 2020); *United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003). The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall … have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

Rodvelt argues that the indictment should be dismissed because the district court inadvertently disclosed his confidential defense strategy to the government. "[I]mproper interference by the government with the confidential relationship between a criminal defendant and his counsel violates the Sixth Amendment only

if such interference substantially prejudices the defendant." *Danielson*, 325 F.3d at 1069 (internal quotation marks omitted). For cases involving the prosecution obtaining a defendant's trial strategy, the Ninth Circuit employs a two-step analysis. *See id*. at 1071. "First, the defendant must make a prima facie showing of prejudice." *Id*. (internal quotation marks omitted). "It is not enough to establish a prima facie case to show that the government informant was involuntarily present at a meeting and passively received privileged information about trial strategy. Rather … the government informant must have acted affirmatively to intrude into the attorney-client relationship and thereby to obtain the privileged information." *Id*. "Second … once the prima facie case has been established, the burden shifts to the government to show that there has been ... no prejudice to the defendant as a result of these communications." *Id*. (internal quotation marks and alteration omitted). To meet its burden, "the government … must show by a preponderance of that evidence, that all of the evidence it proposes to use, and all of its trial strategy, were derived from legitimate independent sources." *Id*. at 1072 (internal quotation marks and citation omitted).

The district court's accidental disclosure to the prosecution of Rodvelt's motive for setting the rat-trap shotgun device did not violate Rodvelt's Fifth or Sixth Amendment rights. Rodvelt voluntarily gave this ex parte testimony at an evidentiary hearing on his motion to dismiss for speedy trial violations. Rodvelt

fails to show that the Fifth Amendment privilege against self-incrimination applies. Further, Rodvelt fails to show a Sixth Amendment violation because the prosecution did not affirmatively intrude into his attorney-client relationship when it passively received the district court's accidental disclosure. Moreover, Rodvelt cannot show prejudice from the district court's disclosure because Rodvelt's expert disclosure disclosed the same information and thus was a legitimate, independent source for any change in the prosecution's trial preparation or strategy.

4.     A district court's ruling on a motion to suppress is reviewed de novo. *See United States v. Washington*, 490 F.3d 765, 769 (9th Cir. 2007). The district court's underlying factual findings are reviewed for clear error. *Id.* The Fifth Amendment requires "that a confession be voluntary to be admitted into evidence." *Dickerson v. United States*, 530 U.S. 428, 433 (2000). "In implementing this bedrock constitutional value, our focus is on whether the defendant's will was overborne by the circumstances surrounding the giving of the confession, an inquiry that takes into consideration the totality of all the surrounding circumstances – *both* the characteristics of the accused *and* the details of the interrogation." *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (en banc) (internal quotation marks and alterations omitted).

"The government must prove by a preponderance of the evidence that the statement was voluntary." *United States v. Harrison*, 34 F.3d 886, 890 (9th Cir.

7

1994). "[T]here are *no* circumstances in which law enforcement officers may suggest that a suspect's exercise of the right to remain silent may result in harsher treatment by a court or prosecutor." *Id*. at 891-92.

Looking at the totality of the circumstances, Rodvelt's statement to Special Agent Jay Henze ("Agent Henze") in the afternoon of September 8, 2018, was voluntary. The night before, outside a grocery store, Rodvelt had a non-custodial interview where he was read his *Miranda* rights and made inculpatory admissions. Earlier that day, in the desert, Rodvelt was arrested, read his *Miranda* rights, engaged in a custodial interview, and made further inculpatory comments. After about two hours in a holding cell, Rodvelt voluntarily asked to speak to Agent Henze and made statements about his property.

Twenty minutes later, Rodvelt again asked to speak to Agent Henze. In this conversation, Agent Henze told Rodvelt that Rodvelt would be held accountable if additional people were hurt, and if Rodvelt did not tell Agent Henze, it would come back on Rodvelt. Rodvelt then confessed incriminating information to Agent Henze. Agent Henze's comments in this second conversation are the only source of coercion challenged by Rodvelt on appeal.

Agent Henze's statement did not suggest that Rodvelt may receive harsher treatment by a court or prosecutor by staying silent. *Compare United States v. Tingle*, 658 F.2d 1332, 1334 (9th Cir. 1981) (officer told defendant he would

8

"inform the prosecutor that she was 'stubborn or hard-headed' if she refused" to cooperate), *Harrison*, 34 F.3d at 890 (agent asked defendant "whether she thought it would be better if the judge were told that she had cooperated or had not cooperated"), *Tobias v. Arteaga*, 996 F.3d 571, 578 (9th Cir. 2021) (officer told juvenile suspect that "when we take the case to court … [i]t's going to look like you're down – you're so down for the hood that you didn't want to speak.  So they might throw the book at you.").  Under the totality of the circumstances, taking into account both the characteristics of the accused and the details of the interrogation, we agree with the district court that Rodvelt's statement to Agent Henze was voluntary.

**AFFIRMED.**