# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41115

United States Court of Appeals
Fifth Circuit

**FILED**
July 5, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOSE ROBERTO GOMEZ-VALLE,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, PRADO, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

The opinion issued June 29, 2016 is withdrawn by the panel, and the following is issued in its place:

Jose Roberto Gomez-Valle appeals a 34-month sentence imposed after he pleaded guilty to harboring undocumented aliens for financial gain. Gomez-Valle contends that the district court erred in failing to grant a mitigating role adjustment to his offense level pursuant to § 3B1.2 of the United States Sentencing Guidelines. We affirm.

**I**

Gomez-Valle concealed undocumented aliens at a residence that the parties describe as a "stash house" in McAllen, Texas, while the aliens awaited

No. 15-41115

transportation to other Texas cities. He contends that his role in the criminal enterprise was minimal or minor within the meaning of § 3B1.2 of the Sentencing Guidelines.[1]

The presentence report (PSR) reflects that in October 2014, Customs and Border Protection (CBP) agents attempted to conduct a traffic stop of a vehicle that appeared to be heavily loaded. The driver took evasive actions and ultimately drove off the road and stopped in a grove of trees. The driver absconded, but CBP agents apprehended sixteen undocumented aliens not far from the abandoned vehicle. One of them, Edgardo Rocha, was later identified as "a transporter and brush guide," who "conspired with other unindicted individuals to transport the 15 [other] undocumented aliens to Houston, Texas, in exchange [for] financial compensation." Further investigation indicated that the aliens had departed in the vehicle from the McAllen stash house.

Immigration and Customs Enforcement (ICE) agents conducted "intermittent surveillance" of the stash house and in December 2014, observed a white truck arrive and then depart fifteen minutes later, "travelling in tandem with two scout vehicles." Agents detained the truck after it stopped and a group of individuals exited. The driver, Guillermo Raga, was subsequently identified as a "transporter," who conspired with other unindicted individuals to transport undocumented aliens to an area north of Edinburg, Texas. The agents found twenty aliens in the vicinity of the drop-off location. These individuals had been harbored at the stash house.

In March 2015, ICE agents were admitted to the stash house by the woman, Lucia Sandoval, with whom Gomez-Valle lived and found him in a back room of the house with undocumented aliens. Gomez-Valle was taken

---

[1] *See* U.S. SENTENCING GUIDELINES MANUAL § 3B1.2 (2014) [hereinafter U.S.S.G.].

2

into custody. During questioning, he said that he had resided at the stash house with Sandoval since October 2014, during which time "he had harbored approximately 50 undocumented aliens," approximately twenty in October 2014, twenty in December 2014, and an additional nine during the week prior to his arrest. On two occasions, Gomez-Valle retrieved aliens from business locations in McAllen and drove them to the stash house. Gomez-Valle said that he was paid $400 per week for housing undocumented aliens and was provided an additional $200 to purchase food for them. He reported that his total compensation was approximately $2,000. Gomez-Valle claimed that he undertook these actions at the behest of an individual named "Gordo." An alien interviewed by agents, however, identified Gomez-Valle as "Gordo" from a photo lineup.

Gomez-Valle pleaded guilty to one count of harboring undocumented aliens within the United States for private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), (a)(1)(A)(v)(II), and (a)(1)(B)(i). A conspiracy count was not pursued. The PSR recommended that Gomez-Valle should not receive an offense level reduction pursuant to U.S.S.G. § 3B1.2 based on his role in the offense, noting that "[a]lthough Gomez-Valle's role cannot be described as aggravating, his actions do not merit a mitigating role adjustment."

Gomez-Valle objected to the PSR, arguing that he was a "minimal participant" in the smuggling operation and was entitled either to a two- or four-level downward adjustment in his offense level pursuant to § 3B1.2.[2] Gomez-Valle averred that his was a minor role because he: (1) was merely being paid for "the use of his home"; (2) had no role in transporting the aliens to their ultimate destinations; (3) received only a fraction of the smuggling fee paid by each alien, none of which was collected by him; and (4) took direction

---

[2] U.S.S.G. § 3B1.2.

No. 15-41115

from a man named "Gordo." The Probation Office responded that a mitigating role adjustment was unwarranted because Gomez-Valle's "role was that of a caretaker and transporter of undocumented aliens" and that Gomez-Valle took "affirmative steps to commit th[e] offense when he allowed that the undocumented aliens be harbored at the stash house and when he picked up undocumented aliens from two different businesses."

At the sentencing hearing, Gomez-Valle again objected to the PSR's recommendation that a § 3B1.2 reduction be denied. The district court overruled the objection and adopted the findings of the PSR. Applying a total offense level of 15 and a criminal history category of IV, the court calculated a guidelines range of 30 to 37 months of imprisonment and sentenced Gomez-Valle to 34 months of imprisonment. Gomez-Valle has appealed.

## II

Gomez-Valle contends that the district court erred by refusing to grant a mitigating role adjustment pursuant to § 3B1.2. His arguments are primarily based on the Sentencing Commission's recent amendment to the commentary of § 3B1.2, which became effective on November 1, 2015, approximately three months after Gomez-Valle was sentenced but while this appeal was pending.[3] (Gomez-Valle was sentenced on August 7, 2015.) Gomez-Valle argues that Amendment 794 was intended to clarify § 3B1.2, as opposed to effect substantive changes, and is therefore available for consideration in cases on direct appeal.[4]

---

[3] *See* Sentencing Guidelines for United States Courts, 80 Fed. Reg. 25,782, 25,782 (May 5, 2015) (reflecting that on April 30, 2015 the Sentencing Commission proposed amendments to § 3B1.2 to become effective November 1, 2015).

[4] *See* U.S.S.G. § 1B1.11(b)(2) ("[I]f a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes.").

No. 15-41115

## A

The parties initially dispute the applicable standard of review. Gomez-Valle asserts that he preserved error by objecting to the denial of a mitigating role adjustment pursuant to § 3B1.2. The Government argues that our review is for plain error, noting that though "Gomez objected to the lack of a mitigating role reduction . . . [,] Gomez did not reference Amendment 794."

When an argument is preserved in the district court, "we review the application of the Guidelines *de novo* and the district court's factual findings—along with the reasonable inferences drawn from those facts—for clear error."[5] "Whether [a defendant] was a minor or minimal participant is a factual determination that we review for clear error."[6] "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole."[7]

But generally, when a defendant "objects to his sentence on grounds different from those raised on appeal, we review the new arguments raised on appeal for plain error only."[8] An argument is not preserved if the objection presented to the district court did not give "the district court the opportunity to address the gravamen of the argument presented on appeal."[9]

In *United States v. Sanchez*, this court applied plain error review when neither the defendant nor the district court was aware of the pendency of a proposed amendment to the Guidelines.[10] In that case, there was no guideline at the time of sentencing expressly applicable to the offense of failing to register as a sex offender under the Sex Offender Registration and Notification

---

[5] *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013).

[6] *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005).

[7] *Id.*

[8] *United States v. Garcia-Perez*, 779 F.3d 278, 281 (5th Cir. 2015) (internal quotation marks and citation omitted).

[9] *Id.* (internal quotation marks and citation omitted).

[10] 527 F.3d 463, 464 (5th Cir. 2008); *see also United States v. Rodriguez*, 305 F. App'x 206, 207 (5th Cir. 2008) (per curiam).

Act (SORNA).[11]  The proposed amendment created a new section applicable to this offense.[12]  We found plain error and required resentencing.  We explicitly stressed the "narrowness of our holding":

> We hold only that, where, at the time of sentencing there is no guideline in effect for the particular offense of conviction, and the Sentencing Commission has promulgated a proposed guideline applicable to the offense of conviction, the district court's failure to consider the proposed guideline when sentencing the defendant may result in reversible plain error.[13]

In the present case, the text of § 3B1.2 was in effect at the time of sentencing, and the text itself remained unchanged by Amendment 794, though proposed changes to the commentary had been published by the Sentencing Commission and transmitted to Congress on April 30, 2015, well before Gomez-Valle's August 2015 sentencing.[14]  However, it is unnecessary to resolve whether the plain error standard of review applies in the present circumstances because Gomez-Valle fails to demonstrate error even under the less stringent clear error standard.

B

Section 3B1.2 of the Sentencing Guidelines instructs sentencing courts to decrease a defendant's offense level by four levels "[i]f the defendant was a minimal participant in any criminal activity," two levels "[i]f the defendant was a minor participant in any criminal activity," and three levels if the defendant's level of participation fell between minimal and minor.[15]  The commentary to § 3B1.2 provides that a mitigating role adjustment is available to any

---

[11] *Sanchez*, 527 F.3d at 464.

[12] *Id.*

[13] *Id.* at 466.

[14] *See* Sentencing Guidelines for United States Courts, 80 Fed. Reg. 25,782, 25,782 (May 5, 2015).

[15] U.S.S.G. § 3B1.2.

defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant."[16]

As noted above, Amendment 794 left the text of § 3B1.2 unchanged but made various revisions to the commentary.[17] The Commission explained that the amendment was a result of a study that, overall, found that the mitigating role provision in the Guidelines "is applied inconsistently and more sparingly than the Commission intended."[18] Among other reasons expressed for promulgating the amendment, the Commission stated that it "addresses a circuit conflict and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances."[19]

Specifically, the Commission noted that the Seventh and Ninth Circuits had concluded that the "average participant," as used in § 3B1.2, "means only those persons who actually participated in the criminal activity at issue in the defendant's case, so that the defendant's culpability is determined only by reference to his or her co-participants in the case at hand."[20] The Commission observed that the First and Second Circuits had interpreted § 3B1.2 differently, "conclud[ing] that the 'average participant' also includes 'the universe of persons participating in similar crimes.'"[21] Under this latter approach, the Commission said that "courts will ordinarily consider the defendant's culpability relative both to his co-participants and to the typical offender."[22] Amendment 794 adopts the approach that "when determining

---

[16] *Id*. § 3B1.2 cmt. n.3(A).

[17] *See* U.S.S.G. app. C, amend. 794, at 116-18 (Supp. Nov. 1, 2015).

[18] *Id*. at 117.

[19] *Id*.

[20] *Id*. (citing *United States v. Cantrell*, 433 F.3d 1269, 1283 (9th Cir. 2006); *United States v. Benitez*, 34 F.3d 1489, 1498 (9th Cir. 1994); *United States v. DePriest*, 6 F.3d 1201, 1214 (7th Cir. 1993)).

[21] *Id*. (quoting *United States v. Santos*, 357 F.3d 136, 142 (1st Cir. 2004)) (citing *United States v. Rahman*, 189 F.3d 88, 159 (2d Cir. 1999)).

[22] *Id*.

mitigating role, the defendant is to be compared with the other participants 'in the criminal activity.'"[23]

The Commission also reasoned that at least four Circuit Courts of Appeals had "denied [a defendant] a mitigating role adjustment solely because he or she was 'integral' or 'indispensable' to the commission of the offense."[24] Disagreeing with this approach, the Commission explained that Amendment 794 "revise[d] the commentary to emphasize that the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative and that such a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible."[25] The commentary was amended to specify that "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative [and] [s]uch a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity."[26]

Amendment 794 introduced a list of non-exhaustive factors that a sentencing court should consider in determining whether to apply a mitigating role adjustment.[27] In addition, Amendment 794 provides that "a defendant who does not have a proprietary interest in the criminal activity and who is

---

[23] *Id.*

[24] *Id.* at 118 (citing *United States v. Skinner*, 690 F.3d 772,783-84 (6th Cir. 2012); *United States v. Deans*, 590 F.3d 907, 910 (8th Cir. 2010); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008); *United States v. Carter*, 971 F.2d 597, 600 (10th Cir. 1992)).

[25] *Id.* (internal quotation marks omitted).

[26] *Id.* at 116.

[27] *Id.* The factors are "(i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity"; and "(v) the degree to which the defendant stood to benefit from the criminal activity." *Id.*

simply being paid to perform certain tasks should be considered for an adjustment under this guideline."[28]

The Guidelines Manual does not specify whether Amendment 794 is retroactively applicable.[29] Generally, sentencing and reviewing courts apply "the Guidelines Manual in effect at the date of sentencing,"[30] with exceptions not relevant here. We may nonetheless "'consider' an amendment to commentary of the relevant guideline, even though the amendment did not become effective until after sentencing, 'if it is intended to clarify application of a guideline' and 'was not intended to make any substantive changes to . . . [the guideline] or its commentary.'"[31]

Whether Amendment 794 is substantive or clarifying is a matter of first impression in this circuit. The Ninth Circuit has held in a published opinion that Amendment 794 is clarifying and retroactive to cases on direct appeal.[32] In an unpublished opinion, the Eleventh Circuit considered the non-exhaustive factors added by Amendment 794 to a sentence imposed prior to the Amendment's effective date, noting briefly that it "consider[s] clarifying amendments retroactively on appeal regardless of the date of sentencing."[33] In a recent opinion, the First Circuit declined to reach the issue, noting that the changes effected by Amendment 794 provided no benefit to the defendant.[34]

---

[28] *Id.*

[29] *See id.* § 1B1.10(d) (2015).

[30] *United States v. Huff*, 370 F.3d 454, 465 (5th Cir. 2004); *accord* U.S.S.G. § 1B1.11(a) (requiring use of "the Guidelines Manual in effect on the date that the defendant is sentenced").

[31] *Huff*, 370 F.3d at 465-66 (quoting *United States v. Gross,* 26 F.3d 552, 555 (5th Cir. 1994)).

[32] *United States v. Quintero-Leyva*, No. 14-50509, 2016 WL 2865713, at *3 (9th Cir. May 17, 2016).

[33] *United States v. Casas*, 632 F. App'x 1003, 1005 (11th Cir. 2015) (per curiam).

[34] *United States v. Morosco*, Nos. 15-1802 & 15-1809, 2016 WL 2756000, at *20-21 (1st Cir. May 12, 2016).

No. 15-41115

We conclude that it is unnecessary to resolve whether Amendment 794 was a substantive change or instead only clarifying because even if it were applied retroactively, it would not affect Gomez-Valle's sentence.

## C

Relying on Amendment 794, Gomez-Valle contends that the district court improperly applied § 3B1.2 because there is "no evidence that [Gomez-Valle] understood the scope o[r] structure of the smuggling operation" or "exercised decision making authority," because he did not organize or plan the criminal activity, but rather acted at the direction of another, i.e. "Gordo." Gomez-Valle also notes that he received only $2,000 in total compensation, though he asserts that each alien paid a fee of $1,600 to the smugglers.

Gomez-Valle further contends that language in the PSR as well as dialogue between the district court and Gomez-Valle at sentencing indicates that the district court erred because, contrary to the Sentencing Commission's intent as expressed in Amendment 794, the district rejected a mitigating role adjustment "solely" on the basis that Gomez-Valle's harboring of the undocumented aliens was "integral" to the offense. The record does not support any of these contentions.

The district court assessed Gomez-Valle's responsibilities in the criminal enterprise. The district court observed at sentencing that Gomez-Valle fed the aliens he housed only once or twice a day, and the district found that the aliens were kept "in horrible conditions" at the stash house. Many of the aliens were hungry when they were discovered by agents and said that Gomez-Valle had pocketed money given to him to buy food. The district court was also skeptical that "Gordo," who Gomez-Valle said recruited him and was, according to Gomez-Valle, the leader of the human smuggling operation, even existed. As noted, an alien identified Gomez-Valle as "Gordo," and the PSR discussed evidence indicating that Gomez-Valle himself might be "Gordo."

10

Even if Gomez-Valle was not Gordo, Amendment 794 does not provide an affirmative right to a § 3B1.2 reduction to every actor *but* the criminal mastermind. Moreover, Gomez-Valle's suggestion that he was unaware of the scope of the operation is not well taken. He transported aliens on two separate occasions and had knowledge that the aliens were in the country illegally. He hid aliens at his stash house, and he knew they were scheduled to be taken to other cities.

Amendment 794 provides that the adjustment is only applicable for a "defendant" who is "substantially less culpable than the average participant in the criminal activity." The facts of this case do not indicate that Gomez-Valle is such a participant. The district court did not clearly err in finding that Gomez-Valle was an average participant in the human smuggling activity.

Accordingly, even assuming, without deciding, that Amendment 794 is "clarifying" and should be considered on appeal, it does not affect the outcome in this case. The district court did not err in concluding that Gomez-Valle was neither a "minor" nor a "minimal" participant eligible for a § 3B1.2 reduction.

\*     \*     \*

The judgment of the district court is AFFIRMED.