# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41303

United States Court of Appeals
Fifth Circuit

**FILED**
May 23, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

FRANCISCO JAVIER SANCHEZ-VILLARREAL,

    Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before PRADO, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Francisco Javier Sanchez-Villarreal pleaded guilty to possession with intent to distribute cocaine. The district court sentenced Sanchez-Villarreal to 155 months' imprisonment after refusing to apply a mitigating-role adjustment. Sanchez-Villarreal appealed, and we vacate and remand for resentencing.

I

On or about February 10th, 2015, a police officer stopped Sanchez-Villarreal while driving in Texas. The officer discovered five bundles of cocaine weighing approximately 5.95 kilograms, and an additional four plastic baggies of cocaine in the truck. Sanchez-Villarreal stated that he had been hired by a

No. 15-41303

person he knew only as "Chaparro" to transport the cocaine. He admitted that he was paid $1,000 to deliver the cocaine to an unknown person who would be waiting at a convenience store and that he personally intended to sell the four baggies of cocaine. He also admitted that, less than a month earlier, he had delivered approximately the same amount of cocaine for Chaparro. A zippered pouch containing a handgun, a loaded magazine and second magazine clip, and nineteen rounds of ammunition was also found concealed above the truck's driver's seat visor. Sanchez-Villarreal stated that "they" had provided him with the firearm for protection, but he did not identify "they."

On March 4, 2015, a federal grand jury indicted Sanchez-Villarreal for conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and for possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. Pursuant to a plea agreement, Sanchez-Villarreal pleaded guilty to the second count.

The Probation Officer prepared the presentence report (PSR) using the 2014 edition of the Guidelines Manual, and calculated Sanchez-Villarreal's total offense level to be 29. That offense level combined with Sanchez-Villarreal's Category V criminal history yielded a Guidelines sentencing range of 140 to 175 months.

Sanchez-Villarreal filed written objections to the PSR. Relevant here, he objected to the PSR's failure to recommend a mitigating-role adjustment under U.S.S.G. § 3B1.2. In response, the Probation Office maintained its position that a mitigating-role adjustment was not warranted.

At the sentencing hearing, Sanchez-Villarreal's counsel urged the court to grant his client a mitigating-role reduction. He argued that Sanchez was a "standard 'mule'" who had been ordered to transport drugs without knowing the end location and without coordinating or initiating the drug trafficking.

2

No. 15-41303

The district court judge responded that she understood the argument and the standards for assessing the role, but she ultimately overruled the objection and concluded that Sanchez-Villarreal's conduct did not warrant a mitigating-role adjustment. In doing so, the judge advised that this was one area where she "probably had some disagreement with the guidelines as well." The district court explained its reasoning:

> [B]ecause while it's true that he kind of may be not the person involved at the high end of the overall conspiracy, he may not be the person organizing everything, he may be not the person gaining the most financially from this, but – but he is – I'm hesitating to use the word "critical," but I'll go ahead and use the word "critical." He is critical to the operation as far as moving the drugs, and – and also, especially here, where by his own admission this was the second time he'd done this – and in that regard I do consider that, his admission – he's –he's entrusted, obviously to get this work done. If we didn't have individuals like Mr. Sanchez willing to get this work done, then the choice from the people that are higher up would be either to stop doing it or to do it themselves, and then we'd be able to at least have those defendants facing the penalties.

After overruling Sanchez-Villarreal's mitigating-role objection, the district court announced an oral sentence of 135 months' imprisonment. Several hours later that day, the district court reconvened the sentencing hearing and the judge explained that she had misspoken that morning and meant to sentence Sanchez-Villarreal to 155 months' imprisonment. Counsel for Sanchez-Villarreal objected to the revised sentence, and the district court overruled the objection. Sanchez-Villarreal timely filed a notice of appeal.

II

We must first decide whether the district court had authority to resentence Sanchez-Villarreal under Rule 35 of the Federal Rules of Criminal Procedure. Rule 35(a) dictates that, "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or

other clear error." We review do novo whether the district court had jurisdiction to resentence under Rule 35(a). *United States v. Olarte-Rojas*, 820 F.3d 798, 804 (5th Cir. 2016).

The question here is whether the district court's initial 135-month orally pronounced sentence was the result of "clear error," making it subject to Rule 35 correction. "The narrow authority of the sentencing court to act under Rule 35(a) extends solely to 'cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action.'" *Id.* at 803–04 (quoting Fed. R. Crim. P. 35, advisory committee's note to 1991 amendment). "Rule 35(a) is not designed for the court to reconsider the application or interpretation of the Guidelines or to change its mind about the propriety of a sentence, and should not be used to reopen issues previously resolved at sentencing 'through the exercise of the court's discretion with regard to the application of the sentencing [G]uidelines.'" *Id.* (quoting Fed. R. Crim P. 35, advisory committee's note to 1991 amendment).

Here, after calculating the Guidelines range of 140–175 months, affirming that it was "an appropriate range for sentencing" and that this was *not* a case where "the low end of that 140 months is appropriate," the district court then immediately announced a sentence significantly *below* that range. The district court gave no explanation justifying a downward variance, contrary to the Supreme Court's instruction in *Gall v. United States*, 552 U.S. 38, 46 (2007), that the district court "must give serious consideration to the extent of any departure from the Guidelines and must explain [its] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." Indeed, the district court's comments all appear aimed at justifying a high-end Guidelines sentence. Further, there is nothing in the record suggesting that—between its initial oral

No. 15-41303

pronouncement of 135 months and its revised sentence of 155 months—the district court "reexamine[d] whether a guideline should be applied, reevaluate[d] the application of a guideline that was subject to interpretation, reconsider[ed] calculations made under the appropriate guidelines range, [sought] to alter the sentence because of a disagreement with a guideline, or reconsider[d] whether the sentence was a proper exercise of its discretion." *Olarte-Rojas*, 820 F.3d at 805. Rather, after quickly recalling the case, the district judge explained that the initial sentence was "simply misspoken," and that she "had specifically referenced that [she] was sentencing [Sanchez-Villarreal] within the guidelines" and "indicated that I didn't think the low end was sufficient." Accordingly, because it is facially apparent from the record that this was an "obvious error or mistake that almost certainly would result in a remand," *see id.*, we hold that the district court had authority to resentence Sanchez-Villarreal under Rule 35.

## III

Sanchez-Villarreal argues that the district court erred in denying him the mitigating-role reduction pursuant to U.S.S.G. § 3B1.2. Effective November 1, 2015—several months after the district court sentenced Sanchez-Villarreal—the Sentencing Commission amended the commentary to § 3B1.2. *See* U.S.S.G. app. C supp., amend. 794 (Nov. 1, 2015).[1] Sanchez-Villarreal contends on appeal that Amendment 794 is a clarifying amendment and thus retroactively applicable to his sentence. He argues that the district court erred in failing to apply the amendment when determining whether to grant his request for a mitigating-role adjustment.[2]

---

[1] The Sentencing Commission first published the proposed Amendment 794 on April 30, 2015, several months before Sanchez-Villarreal's sentencing hearing. *See United States v. Gomez-Valle*, 828 F.3d 324, 328 (5th Cir. 2016).

[2] If the district court had granted the mitigating-role adjustment, the additional two-level reduction would have rendered a total offense level of 27. Combined with Sanchez-

No. 15-41303

A

Section 3B1.2 provides a two-level decrease to the defendant's applicable offense level if the defendant played a "minor" role in the criminal activity or a four-level decrease if the defendant's role was "minimal." At the time of Sanchez-Villarreal's sentencing, the commentary to § 3B1.2 described the mitigating-role adjustment as applying to "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." § 3B1.2 cmt. n.3 (2014). The commentary also described a "minimal participant" as one who is the least culpable and may lack "knowledge or understanding of the scope and structure of the enterprise and of the activities of others," while the "minor participant" is one who is less culpable than most other participants "but whose role could not be described as minimal." § 3B1.2, cmt. nn.4, 5. Further, the commentary noted that "[a] defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline." § 3B1.2, cmt. n.3. The district court's decision regarding whether to apply the reduction is "heavily dependent upon the facts of the particular case." § 3B1.2 cmt. n.3(C).

Amendment 794, which became effective less than two months after Sanchez-Villarreal was sentenced, revised the commentary to § 3B1.2 but not the language of the actual Guidelines provision. *See* U.S.S.G. app. C supp., amend. 794. The amendment made several revisions, including adding a "non-exhaustive list of factors" that the court should consider in determining

---

Villarreal's criminal history category of V, this would have resulted in a Guidelines range of 120–150 months' imprisonment.

whether to apply the adjustment. *Id.* Importantly for this appeal, the Commission added the following language at the end of Note 3(C):

> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

As part of its "Reasons for the Amendment," the Commission cited case law demonstrating that courts had been denying mitigating-role adjustments solely because defendants were integral or indispensable to the criminal activity. *Id.* The Commission explained that such a construction of the Guideline was inconsistent with the primary criterion of relative culpability. *Id.* The Commission also explained that the amendment was intended to address a circuit conflict regarding the meaning of "average participant" in the Guidelines provision. The amendment "adopt[ed] the approach of the Seventh and Ninth Circuits, revising the commentary to specify that, when determining mitigating role, the defendant is to be compared with the other participants, 'in the criminal activity.'" *Id.*

B

This court may consider amendments to the Guidelines that were "not effective at the time of the commission of the offense or at the time of sentencing" if they are "intended only to *clarify*, rather than effect substantive changes." *United States v. Anderson*, 5 F.3d 795, 802 (5th Cir. 1993). In such a case, the amendments are "not controlling, [and this court] consider[s] [them] as evidence of the Sentencing Commission's intent behind" the Guideline at issue. *Id.*

At oral argument, the Government conceded that Amendment 794 is clarifying, *see also United States v. Quintero-Levya*, 823 F.3d 519, 522 (9th Cir.

No. 15-41303

2016) (noting the Government's concession that Amendment 794 applies retroactively), however, our court has not yet itself determined whether Amendment 794 is clarifying.[3] Three other circuit courts—the Sixth, the Ninth, and the Eleventh—have recently held that Amendment 794 is a clarifying amendment and thus retroactively applicable, *see Quintero-Levya*, 823 F.3d at 522; *United States v. Cruickshank*, 837 F.3d 1182, 1194 (11th Cir. 2016); *United States v. Carter*, 662 F. App'x 342, 349 (6th Cir. 2016) (unpublished), and the parties have not drawn our attention to contrary authority. *Cf. United States v. Morosco*, 822 F.3d 1, 24 (1st Cir. 2016) (declining to decide whether Amendment 794 is clarifying or substantive).

In determining whether an amendment to the Guidelines is clarifying or substantive, this court looks to several, non-determinative factors: (1) whether the Commission expressly characterizes the amendment as clarifying; (2) whether the amendment is intended to address a circuit split, which generally indicates that the amendment is substantive, not clarifying; (3) whether the amendment is listed in § 1B1.10(d)[4] as being retroactively applicable; and (4) whether the amendment alters the language of the commentary rather than the language of the Guideline itself, which may suggest that it is clarifying. *See United States v. Huff*, 370 F.3d 454, 465–67 (5th Cir. 2004). Here, two factors suggest that Amendment 794 is clarifying. First, the amendment alters only the text of the commentary and does not change the text of the Guideline itself. U.S.S.G. app. C supp., amend. 794*; see also Huff*, 370 F.3d at 466.

---

[3] Several recent cases have considered the question and noted that it is one of first impression in this circuit, but none has decided the issue. *See United States v. Castro*, 843 F.3d 608, 610–11 (5th Cir. 2016) (finding it unnecessary to decide the retroactivity question because, even assuming that the amendment was clarifying and applicable, the district court did not clearly err); *United States v. Gomez-Valle*, 828 F.3d 324, 330–31 (5th Cir. 2016) (assuming that Amendment 794 applied to the defendant's pre-amendment sentence).

[4] The relevant case law references § 1B1.10(c), which was re-designated as § 1B1.10(d) on November 1, 2014. *See* U.S.S.G. app. C supp, amend. 780 (Nov. 1, 2014).

No. 15-41303

Second, although the Commission did not use the word "clarify" in the text of the amendment, the "Reasons for Amendment" section explains that the amended commentary was issued to better reflect the Commission's intent and provide "additional guidance to sentencing courts." *See* U.S. Sentencing Guidelines Manual app. C, amend. 794. (explaining that the amendment was responsive to a Commission study indicating "that [the] mitigating[-]role [adjustment] is applied inconsistently and more sparingly than the Commission intended"); *see also Huff*, 370 F.3d at 466.

On the other hand, the amendment is not listed in § 1B1.10(d) as being retroactively applicable, *see* § 1B1.10(d), and as noted earlier, the amendment resolves a circuit split regarding who qualifies as an "average participant." U.S.S.G. app. C supp., amend. 794. In *Huff*, however, we noted that this court has held that a Guidelines amendment was clarifying even though it was not designated as applying retroactively, 370 F.3d at 466; and in *United States v. Fitzhugh*, this court found a Guidelines amendment to be clarifying even though it resolved a circuit split. 954 F.2d 253, 254–55 (5th Cir. 1992).[5]

On balance, application of the *Huff* factors supports the conclusion that Amendment 794 is clarifying, especially as we also take note of the unanimity of circuit courts that have ruled on the issue and the Government's concession that the amendment is clarifying.

C

We review the interpretation and application of the Guidelines *de novo* and the district court's factual finding that Sanchez-Villareal was not a minor participant for clear error. *See United States v. Vazquez*, 839 F.3d 409, 411–12

---

[5] Indeed, the court in *Fitzhugh* applied the amendment retroactively even though it effectively overruled then-existing Fifth Circuit precedent. *Id.*; *see also Quintero-Levya*, 823 F.3d at 522 (finding that the amendment's resolution of a circuit split indicates that the amendment is clarifying); *Carter*, 662 F. App'x at 349 (same).

No. 15-41303

(5th Cir. 2016); *Gomez-Valle*, 828 F.3d at 327. "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005). The defendant has the burden to show that he is entitled to the adjustment. *See United States v. Angeles-Mendoza*, 407 F.3d 742, 753 (5th Cir. 2005). However, "[i]f the district court made a legal error that affected its factual findings, 'remand is the proper course unless the record permits only one resolution of the factual issue.'" *Vazquez*, 839 F.3d at 411 (quoting *Bail v. LeBlanc*, 792 F.3d 584, 596 (5th Cir. 2015)).[6]

The district court erred in its interpretation and application of § 3B1.1 by giving conclusive weight to its finding that Sanchez-Villarreal's role was "critical." The district court began by stating that it understood the Guidelines "as to what they speak to about the role here," but then noted that "this is one area where I probably have some disagreement with the guidelines as well." It then proceeded to deny the mitigating-role adjustment because of the "critical"

---

[6] As the Government contends, Sanchez-Villarreal did not specifically argue that the district court should apply the then-pending Amendment 794. In his written objections to the PSR, he argued categorically instead that "his role was limited to that of a transporter" and that "he [was] among the least culpable of those involved as he lacked knowledge of the scope and structure of the enterprise that his unindicted co-participants possessed." At sentencing, defense counsel similarly contended that Sanchez-Villarreal was a "standard 'mule,'" who was simply obeying orders and transporting drugs with no knowledge of the "end location." Adopting our reasoning in *United States v. Torres-Perez*, 777 F.3d 764 (5th Cir. 2015), we conclude that Sanchez-Villarreal preserved his objection. He "raise[d] a claim of error with the district court in such a manner so that the district court may [have] correct[ed] itself." *See id.* at 767 (alterations in original) (quoting *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009)). Indeed, not only did Sanchez-Villarreal object to the denial of the mitigating-role adjustment, but his arguments before the district court and on appeal are the same: namely, that his role as a mere drug courier, with limited knowledge of the scope and structure of the drug trafficking activity, qualified him for the adjustment. Notably, Sanchez-Villarreal did not make one argument in support of a particular Guidelines application before the district court, and then make a different argument in support of that application on appeal. *See, e.g., United States v. St. Junius*, 739 F.3d 193, 212 & n.21 (5th Cir. 2013). Rather, Sanchez-Villarreal provided sufficient notice to the district court and to the Government that Sanchez-Villarreal believed his role as a drug courier qualified him for the mitigating-role adjustment under § 3B1.2.

role played by Sanchez-Villarreal, noting the characteristics of Sanchez-Villarreal's conduct that made his role "critical."

Even in light of Amendment 794's clarifying guidance, it is proper for a sentencing court to consider the "critical" or "essential" nature of a defendant's role when assessing application of § 3B1.2; however, a sentencing court may not deny the adjustment on this ground alone. *See* § 3B1.2 cmt. 3(C) ("The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity."); *see also Castro*, 843 F.3d at 612 ("In short, a court does not err by taking into account a defendant's integral role in an offense when deciding whether she is entitled to a § 3B1.2 adjustment, as long as her role is not the sole or determinative factor in its decision."); *Torres-Hernandez*, 843 F.3d at 209 (finding no "indication that the district court relied solely on its view that transporting the marijuana into this country was a critical role in the offense"). Here, the court's explanation at sentencing for its denial of the mitigating-role reduction strongly suggests that the court made outcome determinative its finding that Sanchez-Villarreal's role was "critical."

This error also appears to have pretermitted the district court's application of § 3B1.1 and the applicable commentary. The district court made no findings regarding the "average participant" in the criminal activity to assess whether Sanchez-Villarreal was "substantially less culpable than the average participant." *See Castro*, 843 F.3d at 612–13; *Torres-Hernandez*, 843 F.3d at 208–210; *cf. Cruickshank*, 837 F.3d at 1195 ("While it is possible that the district court did not rely solely on drug quantity in making its minor-role determination, the consequences for Cruickshank's advisory sentencing range could be significant . . . . Thus, we think the wisest course of action is to vacate the district court's decision and remand for resentencing.").

No. 15-41303

In these circumstances, where mitigating-role facts are debatable, and where there was an unexpected Rule 35 resentencing, we deem that "remand is the proper course unless the record permits only one resolution of the factual issue." *Vazquez*, 839 F.3d at 411–12 (quoting *Bail*, 792 F.3d at 596). The district court may well after deliberate inquiry conclude that Sanchez-Villarreal has not carried his burden to prove that he was substantially less culpable than the average participant, however, because more than one outcome is permissible on these facts, we take as our "wisest course of action" a remand. [7]

## IV

For the foregoing reasons, we VACATE the district court's sentence and REMAND for re-sentencing consistent with this opinion.

---

[7] The Government argues that because Sanchez-Villarreal was held accountable only for his personal conduct, he cannot claim that his role was minor. This is contradicted by Note 3(A) in the commentary, however. § 3B1.2 cmt. n.3(A) ("A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline."). The case on which the government relies predates the 2001 amendment that added this language. *See United States v. Garcia*, 242 F.3d 593, 598–99 (5th Cir. 2001) (holding that the defendant did not qualify for a mitigating-role adjustment because "his role was not minor, but actually coextensive with the conduct for which he was held accountable"); *United States v. Hill*, 563 F.3d 572, 577 (7th Cir. 2009) (noting that the Sentencing Commission added the relevant conduct language in comment n.3(A) in 2001 to resolve a circuit split regarding whether a defendant "sentenced solely for his own criminal conduct . . . [is] ineligible for a mitigating role reduction").