# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41198
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
November 2, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

ARMANDO AMIEVA–RODRIGUEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, OWEN, and HAYNES, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Armando Amieva–Rodriguez pled guilty to possession with the intent to distribute more than 50 kilograms of marijuana. The district court declined to apply a mitigating-role reduction and sentenced him to 30 months of imprisonment and three years of supervised release. Amieva–Rodriguez appeals. Because the district court properly applied the sentencing guidelines and did not clearly err in its factual findings, we affirm.

## I

Armando Amieva–Rodriguez was born in Mexico in 1991, and he does not have legal status in the United States. He paid $800 for assistance in attempting to cross the United States–Mexico border illegally. When he

No. 15-41198

reached the Mexican banks of the Rio Grande River on March 31, 2015 in his attempt to enter this country, he agreed to smuggle marijuana across the border for $200. Amieva–Rodriguez and 10 to 12 others built a makeshift raft from a ladder and marijuana bundles and used the raft to cross the Rio Grande and enter the United States. Once across, Amieva–Rodriguez spotted several officers from the United States Bureau of Customs and Border Protection (CBP) and ran into a field of sugar cane to hide. The CBP officers found him beneath the brush and apprehended him. Officers located 101.4 kilograms of marijuana nearby.

One month later, Amieva–Rodriguez pled guilty to possession with intent to distribute more than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. The district court accepted his plea, and the case proceeded to sentencing. The Probation Office prepared a Presentence Investigation Report (PSR) and, based on the 2014 edition of the Sentencing Guidelines Manual, calculated Amieva–Rodriguez's total offense level to be 21. That offense level yielded a Guidelines sentencing range of 37 to 46 months of imprisonment. The Probation Office did not recommend applying a mitigating-role reduction to the offense level, because it concluded that Amieva–Rodriguez was an "active, knowing, and willing" participant whose role as a drug courier was "instrumental" to the offense.

Amieva–Rodriguez objected in writing to the Probation Office's conclusion. He asked the district court to consider "proposed guideline changes" that he said "urg[ed] a finding of minor participant for mere carriers of drugs." At the sentencing hearing, Amieva–Rodriguez again objected to the Probation Office's finding. He argued that his main objective was to cross the border and that his guides forced him to transport the marijuana. The Government contended that Amieva–Rodriguez knowingly agreed to smuggle the marijuana and expected payment for his efforts, and it emphasized the

No. 15-41198

case's trans-national nature. The district court adopted the Probation Office's factual findings as to the mitigating-role reduction, found that Amieva–Rodriguez was a more-than-minor participant and not entitled to a mitigating-role reduction, and imposed a sentence of 30 months of imprisonment and a three-year term of supervised release. Amieva–Rodriguez appealed.

## II

This appeal was held administratively by our court pending the issuance of the mandate in *United States v. Sanchez-Villarreal*.[1] The mandate in that case issued June 14, 2017. Amieva–Rodriguez was released from federal prison on June 28, 2017, after serving his term of imprisonment. We accordingly address whether his appeal is moot.

A person sentenced to supervised release faces "an ongoing consequence that is a sufficient legal interest to support [jurisdiction]" if the district court can modify or terminate the supervised release obligations.[2] This circuit has not resolved whether a district court can modify a *mandatory* supervised release term,[3] but there was no mandatory sentence in his case. The district court found that Amieva–Rodriguez met the safety valve criteria under 18 U S C. § 3553(f) and U.S.S.G. § 5C1.2, and concluded that none of Amieva–Rodriguez's convictions carried a mandatory sentence. Because Amieva–Rodriguez's sentence was non-mandatory it is not "immune to modification,"[4] and if this court were to conclude that the district erred in failing to apply a

---

[1] 857 F.3d 714 (5th Cir. 2017).

[2] *United States v. Lares–Meraz*, 452 F.3d 352, 355 (5th Cir. 2006) (per curiam).

[3] *See United States v. Coleman*, 681 F. App'x 413, 415-416 (5th Cir.) (per curiam), *cert. denied*, 2017 WL 2620066 (2017).

[4] *Lares–Meraz*, 452 F.3d at 355; *see also Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam) ("[T]he possibility that the district court may alter Johnson's period of supervised release . . . prevents Johnson's petition from being moot.").

3

## No. 15-41198

minor-participant adjustment, and we were to remand, the district court could conceivably conclude that a shorter prison term was appropriate and adjust the term of supervised release since Amieva–Rodriguez had served a longer sentence. Since it might be possible for Amieva–Rodriguez to obtain relief, his appeal is not moot.

### III

Central to Amieva–Rodriguez's appeal is Amendment 794 to § 3B1.2 of the Sentencing Guidelines. In general, Section 3B1.2 authorizes district courts to reduce a defendant's offense level based on his or her role in the crime.[5] The district court can reduce a defendant's offense level by two if the defendant "was a minor participant," by four if the defendant was a "minimal participant," and by three if the defendant's participation fell between minor and minimal.[6] Only those defendants who were "substantially less culpable than the average participant in the criminal activity" may qualify for a mitigating-role reduction.[7] Amieva–Rodriguez asserts that he was a minor participant and therefore entitled to a two-level reduction. The commentary to § 3B1.2 explains that a minor participant is a person who is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."[8]

Several months before Amieva–Rodriguez was sentenced, the Sentencing Commission published proposed Amendment 794 to § 3B1.2.[9] The effective date of this amendment was November 1, 2015, a few months after the district court sentenced Amieva–Rodriguez.[10] But this court recently held

---

[5] U.S.S.G. § 3B1.2.

[6] *Id.*

[7] U.S.S.G. § 3B1.2 cmt. n.3(A).

[8] U.S.S.G. § 3B1.2 cmt. n.5.

[9] *See United States v. Gomez–Valle*, 828 F.3d 324, 328 (5th Cir. 2016).

[10] *See* U.S.S.G. app. C sup., amend. 794 (Nov. 1, 2015).

that Amendment 794 was a clarifying amendment.[11]  A clarifying amendment does not change the meaning of a Guideline; it merely provides guidance regarding an existing Guideline.[12]   Clarifying amendments therefore have retroactive effect.[13]  We may consider on appeal whether and how the district court applied Amendment 794.[14]

Amendment 794 expands § 3B1.2's commentary but left its text unchanged.[15]  The amendment resolved a split among the Circuit courts as to the meaning of "average participant."[16]  The amendment clarifies that "the defendant is to be compared with the other participants 'in the criminal activity'" at issue in the defendant's case.[17]  Second, it explains that a person who is paid to perform certain tasks but does not have a proprietary interest in the criminal activity should still be considered for a § 3B1.2 role reduction.[18]  Third, the commentary expressly provides that a defendant who is essential or indispensable to the criminal activity may still receive a § 3B1.2 reduction "if he or she is substantially less culpable than the average participant in the criminal activity"; a defendant's essential or indispensable nature is not dispositive.[19]   Finally, the revised commentary directs district courts to consider the following non-exhaustive list of factors when considering a mitigating-role reduction:

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

---

[11] *See United States v. Sanchez Villarreal*, 857 F.3d 714, 721 (5th Cir. 2017).
[12] *See id.* at 719-21.
[13] *See id.*
[14] *See id.* at 719.
[15] *See* U.S.S.G. app. C sup., amend. 794 (Nov. 1, 2015).
[16] *See id.*
[17] *See id.*; *see also United States v. Gomez–Valle*, 828 F.3d 324, 329 (5th Cir. 2016).
[18] *See* U.S.S.G. app. C sup., amend. 794 (Nov. 1, 2015).
[19] *Id.*

No. 15-41198

(iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)    the degree to which the defendant stood to benefit from the criminal activity.[20]

The Commission explained that it promulgated the amendment to increase how often, and to improve how consistently, district courts apply the mitigating-role reduction.[21]  However, the amendment did not create bright-line rules as to whether drug couriers such as Amieva–Rodriguez qualify for the reduction.[22]  Courts may still take into account a defendant's indispensable role, so long as it is "not the sole or determinative factor in [the court's] decision" to deny a mitigating-role reduction.[23]

## IV

Amieva–Rodriguez contends that the district court did not consider or apply Amendment 794.  We review this issue de novo because it concerns how the district court interpreted or applied the Guidelines.[24]  Amieva–Rodriguez argues that even if the district court did apply Amendment 794, it clearly erred when it concluded that his participation in the smuggling scheme was more-than-minor.  This determination is a factual finding that we review for

---

[20] *Id.*

[21] *See id.*

[22] *See id.*; *see also United States v. Torres–Hernandez*, 843 F.3d 203, 206 (5th Cir. 2016).

[23] *United States v. Castro*, 843 F.3d 608, 612-13 (5th Cir. 2016).

[24] *See Torres–Hernandez*, 843 F.3d at 207; *see also United States v. Lige*, 635 F.3d 668, 670 (5th Cir. 2011).

No. 15-41198

clear error.[25] Because the Guidelines give the district court discretion in this context, its factual finding is not clearly erroneous so long as it is "plausible in light of the record as a whole."[26]

## A

The record leads to the conclusion that the district court considered Amendment 794. The district court adopted the parts of Presentence Investigation Report relevant to this appeal. That report reflects that Amieva–Rodriguez was a "knowing" and "willing" participant, and the facts recited in the report suggest that he "understood the scope and structure of the criminal activity."[27] The PSR's recounting of how Amieva–Rodriguez joined the criminal activity reflects the extent to which he "participated in planning or organizing the criminal activity."[28] The PSR found no evidence that he exercised managerial authority.[29] The PSR documented details about Amieva–Rodriguez's role—how much marijuana he smuggled, how he crossed the border, how much discretion he had, all of which pertain to the "nature and extent of [his] participation in . . . the criminal activity . . . ."[30] It is undisputed that Amieva–Rodriguez was to have earned $200 for participating in the enterprise, which is relevant to the "degree to which the defendant stood to benefit from the criminal activity."[31] By adopting the PSR's findings the district court incorporated the underlying facts into its ultimate finding regarding Amieva–Rodriguez's role.

---

[25] *See Torres–Hernandez*, 843 F.3d at 207; *see also United States v. Gomez–Valle*, 828 F.3d 324, 327 (5th Cir. 2016).

[26] *Torres–Hernandez*, 843 F.3d at 207 (quoting *United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001)).

[27] U.S.S.G. app. C sup., amend. 794 (Nov. 1, 2015) (factor one).

[28] U.S.S.G. app. C sup., amend. 794 (Nov. 1, 2015) (factor two).

[29] U.S.S.G. app. C sup., amend. 794 (Nov. 1, 2015) (factor three).

[30] U.S.S.G. app. C sup., amend. 794 (Nov. 1, 2015) (factor four).

[31] U.S.S.G. app. C sup., amend. 794 (Nov. 1, 2015) (factor five).

No. 15-41198

Other record documents establish that the district court considered the Amendment 794 factors. First, Amieva–Rodriguez's written objection to the PSR on the grounds that "proposed guideline changes are now urging a finding of minor participant for mere carriers of drugs" was clearly in the record before the district court. We can presume that the district court considered Amieva–Rodriguez's written objections to the PSR and his reference to proposed guideline changes, which was Amendment 794. Second, at the sentencing hearing both parties' arguments implicated the Amendment 794 factors. Amieva–Rodriguez's counsel objected to the PSR's finding against a mitigating-role reduction and made arguments as to Amieva–Rodriguez's role in the criminal activity. The Government discussed Amieva–Rodriguez's knowledge about the scope of the crime and the nature of his participation. The district court explicitly referenced the trans-national nature of Amieva–Rodriguez's role when it overruled his objection. Although neither party mentioned the Amendment 794 factors by name, the narratives they presented raised facts tracking those factors. The district court considered the substance of Amendment 794.

**B**

The district court properly concluded that Amieva–Rodriguez was not a minor participant. The district court's finding is plausible and not clearly erroneous in light of both the record and Amendment 794. The facts of this case are analogous to those in *United States v. Torres-Hernandez*, in which we held that the district court did not err in refusing to grant a minor-role reduction to a defendant who, with others, transported marijuana on his back within the United States for compensation.[32]

---

[32] 843 F.3d 203, 204 (5th Cir. 2016).

It was Amieva–Rodriguez's burden to prove, by a preponderance of the evidence, that his conduct warranted the reduction.[33] Yet only one factor—the lack of evidence that Amieva–Rodriguez exercised managerial authority—clearly weighs in his favor. By contrast, three factors weigh against a minor role adjustment. First, Amieva–Rodriguez's co-defendant said that they both "knowingly and willingly agreed to smuggle the marijuana for payment," suggesting that Amieva–Rodriguez understood the criminal nature of his activity and that he was participating in drug smuggling.[34] Next, "the nature and extent of the defendant's participation in . . . the criminal activity"[35] weighs against Amieva–Rodriguez's position. His participation—smuggling marijuana across the international border while himself illegally entering the United States—was significant to the criminal activity, and he had some discretion in how to perform this task. The district court's determination that the nature and extent of Amieva–Rodriguez's participation was more-than-minor is plausible. Because Amieva–Rodriguez expected to earn $200 for participating, it is also plausible that "the defendant stood to benefit from the criminal activity."[36] Neither Amieva–Rodriguez nor the Government provided evidence about the degree to which Amieva–Rodriguez planned or organized the activity, so that factor is neutral.

Amieva–Rodriguez did not offer evidence of the culpability of participants in the drug smuggling operation other than those who, like him, agreed to transport the marijuana and fashioned a means of breaching the United States border. There is no evidence that Amieva–Rodriguez was less culpable than the others who participated with him in transporting marijuana

---

[33] *See Torres–Hernandez*, 943 F.3d at 207 (quoting *United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001)).

[34] U.S.S.G. app. C sup., amend. 794 (Nov. 1, 2015).

[35] *Id.*

[36] *Id.*

across the Rio Grande River.  Similar facts were present in *United States v. Torres-Hernandez*, in which we observed that "[t]he only evidence in the record regarding the participation of others in the possession of the 95 kilograms of marijuana for distribution pertains to the other individuals who had transported the drugs on their respective backs."[37]  We concluded in that case that the defendant "was no more or less culpable than the other transporters. He did not offer any evidence as to the participation, or expected participation, of others involved in the growing, further transportation, or intended sale of this marijuana."[38]  The district court's failure to agree with Amieva–Rodriguez that he was "substantially less culpable than the average participant in the criminal activity" was not a clearly erroneous factual finding.

Although the district court based its decision in part on Amieva–Rodriguez's "instrumental" role, Amendment 794 says that a defendant's indispensable role is not dispositive.[39]  The Amendment does not "provide an affirmative right to a [mitigating-role] reduction to every actor but the criminal mastermind."[40]  A district court remains free to analyze a defendant's indispensable or essential role along with other considerations.

*     *     *

We AFFIRM the district court's judgment.

---

[37] 843 F.3d 203, 209 (5th Cir. 2016).

[38] *Id.*

[39] U.S.S.G. app. C sup., amend. 794 (Nov. 1, 2015).

[40] *United States v. Gomez–Valle*, 828 F.3d, 324, 331 (5th Cir. 2016).