# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2025

Lyle W. Cayce
Clerk

———————————

No. 24-30240

———————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Ricky Lawson,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:22-CR-31-3

———————————————————————

Before King, Ho, and Ramirez, *Circuit Judges*.

Per Curiam:*

Ricky Lawson pleaded guilty to conspiracy to distribute cocaine and was sentenced to 105 months of imprisonment. On appeal, Lawson contends the district court erred in declining to apply a mitigating-role reduction to his sentence. We AFFIRM.

———————————————

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30240

## I.

On January 12, 2022, state troopers pulled over a Nissan Versa that appeared to be closely following a Ford Expedition. Lawson was driving the Versa, with Myrna Grays in the passenger seat. Kendrick Riggins was driving the Expedition, with Shaheed Davis in the passenger seat. In response to questions, Lawson denied following the Expedition, seemed unsure about where he was going, and "showed signs of deception."

Grays consented to a search of the Versa, which revealed 2.4 pounds of cocaine and 2.0 pounds of ecstasy tablets behind the carpet lining of the trunk. The troopers also searched the Expedition and found, among other things, marijuana, a firearm, a digital scale, and over $3,000. Davis claimed ownership of the cash and the firearm. Riggins was found to possess over $700.

Lawson was arrested along with Grays, Riggins, and Davis. Riggins and Davis denied any connection to Lawson and Grays, and Lawson declined to answer questions. Grays submitted to an interview, and "told officers she has known Riggins for a long time and is a close friend of Riggins' mother." Grays explained that she had her friend rent the Versa upon Riggins' request, and that Riggins "told her he would pay half of the money for the rental." According to Grays, Riggins drove the Versa (with Lawson and Grays riding as passengers) from Grays' house to a gas station in El Campo, Texas about an hour away. At the gas station, Riggins got into the Expedition with Davis, and instructed Lawson and Grays to follow them.

Charges were brought against Lawson and the other three individuals. The district court denied their motions to suppress after a hearing before a magistrate judge. Lawson then pleaded guilty, pursuant to a written plea agreement, to one count of conspiracy to distribute cocaine.

No. 24-30240

The presentence report (PSR) reflects that Lawson told the probation officer "he was paid to drive the vehicle, but thought they were going to a casino" and "would not have participated if he had known that there were illegal drugs in the car." Lawson's criminal history included convictions for burglary, possession of a controlled substance, theft, and robbery. The PSR calculated an advisory guidelines range of 120 to 150 months of imprisonment, based on a total offense level of 27 and a criminal history category of V.

Lawson objected to the PSR's failure to consider a mitigating-role reduction under U.S.S.G. § 3B1.2. Lawson argued a four-level reduction was warranted because he did not know or understand the scope and structure of the criminal activity; did not participate in planning or organizing the activity; had no decision-making authority or influence over decision making; merely followed orders as an "uninformed drug 'mule'"; and did not benefit from the criminal activity. Despite Lawson's denial of knowledge of the drugs, the objections also included that Lawson agreed to drive the vehicle knowing there was contraband in it, but did not know how much or what type.

The government seized on this admission and argued that "couriers are an indispensable part of the drug dealing networks." The probation officer declined to apply the adjustment, stating "it does not appear that the defendant's conduct is that of someone who is substantially less culpable than the average participant." In a sentencing memorandum, Lawson responded that whether couriers are indispensable is not a relevant factor. He added that the factual basis, specifically Grays' interview with police, supports the minimal-role reduction.

At sentencing, the district court summarized the government's position on Lawson's role as "[m]ore than minimal, less than leader." The court then stated that Lawson's conduct "does not appear, at this stage,

based on what's contained in the record," to be "that of someone who is substantially less culpable than the so-called average participant in this matter." In response, defense counsel reiterated that Lawson qualified under each of the five factors the Sentencing Guidelines instruct courts to consider when assessing a mitigating-role reduction. The government countered that Lawson knew what was going on. The court replied: "You can't turn a blind eye and be indifferent to transiting drugs with his criminal history. He does have an addiction problem, I agree, but you can't just say, 'Just because I'm transporting them, I don't have to worry about anything else other than getting to and from.'" The court also acknowledged that the guideline range would drop to 84 to 105 months if Lawson were found to be a minimal participant. The court then overruled the objection based on the arguments at sentencing, the facts in the PSR, and the defendant's sentencing memorandum.

The district court then explained that "[i]nstead of granting" Lawson a mitigating-role reduction, it would grant "a downward departure based on [Lawson's] health." After adopting the factual findings contained in the PSR, the court sentenced Lawson to 105 months of imprisonment based on the sentencing factors in 18 U.S.C. § 3553(a), including Lawson's age and poor health. Lawson filed a timely notice of appeal.

## II.

On appeal, Lawson argues the district court erred in declining to apply a mitigating-role reduction under U.S.S.G. § 3B1.2. We review the district court's interpretation and application of the Sentencing Guidelines de novo, and its underlying factual finding that Lawson was not a minimal or minor participant entitled to a reduction for clear error. *United States v. Sanchez-Villarreal*, 857 F.3d 714, 721 (5th Cir. 2017). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *Id.* (quoting

*United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005)). The defendant has the burden of proving by a preponderance of the evidence that the reduction is warranted. *United States v. Castro*, 843 F.3d 608 (5th Cir. 2016).

Section 3B1.2 of the Guidelines instructs courts to decrease a defendant's offense level by four if his role in the criminal activity was "minimal," by two if his role was "minor," and by three if his conduct falls between minimal and minor. The commentary to § 3B1.2 provides that a mitigating role adjustment is available "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." § 3B1.2 cmt. n.3(A). "An 'average participant' under § 3B1.2 'means only those persons who actually participated in the criminal activity at issue in the defendant's case so that the defendant's culpability is determined only by reference to his or her co-participants in the case at hand.'" *United States v. Bello-Sanchez*, 872 F.3d 260, 264 (5th Cir. 2017) (quoting *United States v. Torres–Hernandez*, 843 F.3d 203, 208–09 (5th Cir. 2016)).

This determination is "based on the totality of the circumstances" and "heavily dependent upon the facts of the particular case." § 3B1.2 cmt. n.3(C). Courts should consider the following non-exhaustive factors: (i) the defendant's understanding of the scope and structure of the criminal activity, (ii) his role in planning or organizing, (iii) his degree of decision-making authority, (iv) the extent of his participation in the commission of the criminal activity, and (v) the degree to which he stood to benefit. *Id.* The commentary notes that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Id.* Finally, a sentencing court can consider the "essential" or

"indispensable" nature of a defendant's role but cannot deny the mitigating-role reduction on this ground alone. *Id.*; *Sanchez-Villarreal*, 857 F.3d at 722.

Here, the lack of evidence that Lawson participated in the planning or organizing, exercised decision-making authority or discretion, or stood to benefit beyond being paid to perform a certain task weighs in favor of the reduction. *See* § 3B1.2 cmt. n.3(C). And Lawson persuasively argues that he is less culpable than Grays, who rented the car, Davis, who provided another car, and Riggins, who gave the orders.

That Lawson understood he was being paid to drive a vehicle containing contraband weighs against the reduction. *See Bello-Sanchez*, 872 F.3d at 264–65 (finding no clear error where the defendant "'certainty understood' that she was 'illegally transporting' contraband . . . she was to be 'paid for [her]' participation, and the 'evidence is clear . . . as to the nature and extent of . . . the acts [she] performed'") (quoting *Torres-Hernandez*, 843 F.3d at 209–10). And Lawson's role as a driver was arguably comparable to that of passengers Grays and Davis. *See United States v. Bazan*, 964 F.3d 439, 440 (5th Cir. 2020) ("Though [the defendant] argues that he was merely a courier, the issue turns on his culpability relative to the other participants in the offense."); *Torres-Hernandez*, 843 F.3d at 209 (finding no clear error where the only evidence of the "participation of others . . . pertain[ed] to the other individuals who had transported the drugs" and were "no more or less culpable").

"[W]hen some factors support the [mitigating-role] reduction, but others do not, the district court does not clearly err in denying the reduction." *United States v. Pike*, 979 F.3d 364, 365 (5th Cir. 2020). We have declined to find clear error under similar facts and do so again here. *See, e.g.*, *United States v. Zambrano*, 799 F. App'x 887, 888 (5th Cir. 2020); *United*

*States v. Garcia-Limon*, No. 21-50030, 2022 WL 1115140, at *1 (5th Cir. Apr. 14, 2022).

Finally, contrary to Lawson's arguments, the district court did not err by (1) failing to address the relevant factors, (2) focusing on whether Lawson turned a "blind eye" to drug trafficking, or (3) failing to make findings on whether he was less culpable than the average participant. First, the district court is "not required to expressly weigh each factor in § 3B1.2 on the record." *Torres-Hernandez*, 843 F.3d at 209. Lawson argued that he was entitled to a mitigating-role reduction based on the factors at sentencing, and the district court stated it had considered the parties' arguments in overruling the objection. The court's comments indicate that it considered the relevant factors but concluded that they did not weigh in favor of a reduction. *See id.*

Second, because the factors listed in § 3B1.2 are "non-exhaustive," the district court was not precluded from considering other factors, such as whether Lawson turned a blind eye to the fact that he was transporting drugs. *See* § 3B1.2 cmt. n.3(C); *United States v. Ramirez-Esparza*, 703 F. App'x 276, 279 (5th Cir. 2017). Third, the requirement that the district court "articulate a permissible factual basis for denying the mitigating-role adjustment . . . is limited to cases in which the defendant 'requested that the court articulate the factual basis for the court's finding and the reasons for refusing the reduction.'" *Bello-Sanchez*, 872 F.3d at 266 (quoting *United States v. Melton*, 930 F.2d 1096 (5th Cir. 1991)). *Id.* Lawson made no such request.

Finding no reversible error, we AFFIRM the judgment of the district court.